```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   UNITED STATES OF AMERICA,          )
                                        )
 4                     Plaintiff,       )
                                        )
 5                                      )
     -vs-                               ) Case No. 17 CR 40
 6                                      )
                                        ) Chicago, Illinois
 7   RAKIM ASAD, et al.,                ) January 19, 2022
                                        ) 1:30 p.m.
 8                     Defendants.      )

 9
                     TELEPHONIC TRANSCRIPT OF PROCEEDINGS
10               BEFORE THE HONORABLE JOHN J. THARP, JR.

11   APPEARANCES:

12   For the Plaintiff:      UNITED STATES ATTORNEY'S OFFICE
                             BY:  MS. SHERI L. WONG
13                                MR. PAUL JOSEPH MOWER
                             219 S. Dearborn Street
14                           5th Floor
                             Chicago, IL 60604
15
     For Defendant
16   Rakim Asad:            LAW OFFICES OF ANDREA E. GAMBINO
                            BY:  MS. ANDREA ELIZABETH GAMBINO
17                          53 W. Jackson Boulevard
                            Suite 1332
18                          Chicago, IL 60604

19   For Defendant
     Akeem Asad:            MS. BLAIRE C. DALTON
20                          53 W. Jackson Boulevard
                            Suite 1523
21                          Chicago, IL 60604

22
     Court Reporter:        KELLY M. FITZGERALD, CSR, RMR, CRR
23                          Official Court Reporter
                            United States District Court
24                          219 South Dearborn Street, Room 1420
                            Chicago, Illinois  60604
25                          Telephone:  (312) 818-6626
                            kmftranscripts@gmail.com
```

```
 1   APPEARANCES:  (Continued)

 2   For Defendant
     Mardi Lane:              LAW OFFICES OF ELLEN R. DOMPH
 3                            BY:  MS. ELLEN R. DOMPH
                              53 W. Jackson Boulevard
 4                            Suite 1544
                              Chicago, IL 60604
 5   For Defendant
     Reginald Jones:          GOTTREICH & LEVINSOHN
 6                            BY:  MS. ANNE REBECCA IZZI
                              311 W. Superior Street
 7                            Suite 215
                              Chicago, IL 60654
 8   For Defendant
     Dijon Foston:            NOVELLE & ROELLIG
 9                            BY:  MR. TIMOTHY R. ROELLIG
                              47 W. Polk Street
10                            Suite M11
                              Chicago, IL 60605
11   For Defendant
     Cottrell Mackey:         LAW OFFICES OF JOHN MIRAGLIA
12                            BY:  MR. JOHN M. MIRAGLIA
                              910 W. Van Buren
13                            #25
                              Chicago, IL 60607
14   For Defendant
     Carey Hinton:            LAW OFFICE OF FRANCIS C. LIPUMA
15                            BY:  MR. FRANCIS C. LIPUMA
                              105 W. Adams Street
16                            35th Floor
                              Chicago, IL 60603
17   For Defendant
     Tony Parker:             HALLOCK LAW
18                            BY:  MR. THOMAS C. HALLOCK
                              53 W. Jackson Boulevard
19                            Suite 1424
                              Chicago, IL 60604
20   For Defendant
     Quentin Lucious:         KENT R. CARLSON & ASSOCIATES P.C.
21                            BY:  MR. KENT R. CARLSON
                              53 W. Jackson Boulevard
22                            Suite 1523
                              Chicago, IL 60604
23   For Defendant
     Derrick McNeal:          MR. JOSHUA B. KUTNICK
24                            900 W. Jackson Boulevard
                              Suite 7E
25                            Chicago, IL  60607
```

1    (Proceedings heard via telephone:)

2         THE COURT:  Good afternoon.  This is Judge Tharp.

3    We're calling the case of United States v. Asad, et al., 17 CR

4    40.

5         If you are participating in this call, please keep

6    your line on mute unless you are actively engaged in the

7    discussion that is occurring.

8         I want to first start out getting appearances on the

9    record.

10        Do we have counsel for the United States on the line?

11        MS. WONG:  Yes, Your Honor.  Sheri Wong and Paul

12   Mower on behalf of the United States.

13        THE COURT:  All right.  Good afternoon.

14        Do we have counsel for Rakim Asad on?

15        MS. GAMBINO:  Yes.  Yes, Your Honor.  Good afternoon.

16   This is Andrea Gambino on behalf of Mr. Asad.

17        THE COURT:  Good afternoon.

18        Do we have counsel for Akeem Asad on the line?

19        MS. DALTON:  Yes.  Good afternoon, Your Honor.

20   Blaire Dalton on behalf of Akeem Asad.

21        THE COURT:  All right.  And I should have asked, I'm

22   not sure the situation with respect to defendants given the

23   additional restrictions we're operating under with the MCC and

24   getting people access to phones in light of the COVID spike.

25        Do we have Rakim Asad on the line?

1      (No response.)

2            THE COURT:  All right.

3            MS. GAMBINO:  Your Honor, he's in custody, so I don't

4    believe he is on the line.

5            THE COURT:  All right.  Okay.  I'm just going to

6    double-check.  Sometimes folks show up unexpectedly.

7    Sometimes they don't show up when we expect them.  So bear

8    with me here.

9            All right.  So we have, I'm sorry, Akeem Asad's

10   counsel, Ms. Dalton, you're on?

11           MS. DALTON:  Yes, Your Honor.

12           THE COURT:  All right.  Do we have Akeem Asad on the

13   line?

14           MS. DALTON:  I do not believe so.

15           THE COURT:  All right.

16           Counsel for Mardi Lane?

17           MS. DOMPH:  Good afternoon.  Ellen Domph on behalf of

18   Mr. Lane.

19           THE COURT:  Good afternoon.  Is Mr. Lane on the line?

20      (No response.)

21           THE COURT:  All right.  No response.

22           Counsel for Martez Easter?

23      (No response.)

24           THE COURT:  All right.  Not on the line.

25           Counsel for Reginald Jones?

1      MS. IZZI:  Yes, good afternoon, Judge.  Annie Izzi,

2  I-z-z-i, from Mark Gottreich's office on behalf of Mr. Jones.

3      THE COURT:  Okay.  Good afternoon.  And before I

4  forget, as I was preparing for this afternoon, I don't believe

5  Mr. Gottreich has an appearance on file on behalf of

6  Mr. Jones.

7      MS. IZZI:  Oh.

8      THE COURT:  So bring that to his attention, please.

9      MS. IZZI:  Yes, I will, and we will get that filed.

10 Thank you.

11     THE COURT:  It's possible --

12     MR. KUTNICK:  Excuse me, Your Honor.  This is Joshua

13 Kutnick.  I represent Derrick McNeal.  I believe he's a

14 co-defendant in this matter.

15     THE COURT:  Yes?

16     MR. KUTNICK:  Oh, I'm sorry.  I guess I hadn't been

17 called yet, Your Honor.

18     THE COURT:  We'll get to you, Mr. Kutnick.

19     All right.  So, Ms. Izzi, if you would pass that on

20 to Mr. Gottreich so he'll get his appearance on the record.

21 And if you're going to be participating in the case, you

22 should enter an appearance as well.

23     MS. IZZI:  I will, Judge.  Thank you.

24     THE COURT:  All right.

25     Do we have counsel for Dijon Foston?

1    MR. ROELLIG:  Yes, Judge.  Tim Roellig on behalf of

2    Mr. Foston.

3         THE COURT:  All right.  Is Mr. Foston on the line?

4     (No response.)

5         All right.  No answer, so we'll assume no.

6         Counsel for Cottrell Mackey?

7         MR. MIRAGLIA:  Good afternoon.  John Miraglia on

8    behalf of Mr. Mackey.

9         THE COURT:  All right.  Good afternoon.  Is

10   Mr. Mackey on the line?

11    (No response.)

12        THE COURT:  All right.  No response.

13        Counsel for Carey Hinton?

14        MR. LIPUMA:  Good afternoon, Judge.  Frank Lipuma on

15   behalf of Carey Hinton, and I believe Mr. Hinton is on the

16   line.

17        THE COURT:  Okay.  I think I heard him earlier as

18   well.

19        Mr. Hinton, are you on the line?  You may be muted,

20   Mr. Hinton.

21        We're still not hearing you, Mr. Hinton.  If you're

22   on the line, can you ask the correctional officers to take you

23   off mute?

24        All right.  For the record, we're still not hearing

25   Mr. Hinton.  Hopefully he will join in.  I know we made

1    arrangements for him to participate and did hear him on the

2    line right before the call started.  I'm not sure what the

3    problem is now.

4              Counsel for Tony Parker?

5              MR. HALLOCK:  Good afternoon, Judge.  Tom Hallock on

6    behalf of Tony Parker.

7              THE COURT:  All right.  Is Mr. Parker on the line?

8    He's in custody in IDOC, correct?

9              MR. HALLOCK:  Judge, he's in Winnebago.

10             THE COURT:  Oh, he's in Winnebago.  Is he on the

11   line?

12     (No response.)

13             THE COURT:  All right.  No response.

14             Counsel for Quentin Lucious, or "LUSH-is"?

15             MR. CARLSON:  Good afternoon, Your Honor.  Kent

16   Carlson on behalf of Quentin Lucious, and he is not on the

17   line.

18             THE COURT:  Okay.  Thank you.

19             Counsel for Harriette McPherson?

20             MR. LIPUMA:  Good afternoon, Judge.  Frank Lipuma

21   again.  I'm standing in for Matt Madden.  He asked me to stand

22   in for him, Judge.  And I'm not aware whether Ms. McPherson is

23   on the line or not.

24             THE COURT:  All right.  Ms. McPherson, are you on the

25   line?

1      (No response.)

2           THE COURT:  All right.  No response.

3           Counsel for Derrick McNeal?

4           MR. KUTNICK:  Good afternoon, Your Honor.  Joshua

5      Kutnick on behalf of Derrick McNeal.  I do not believe he's on

6      the line.

7           THE COURT:  Okay.  Thank you.  Good afternoon.

8           And I'm not expecting Mr. Clancy on behalf of Rashad

9      Underwood but just in case he's on the line?

10     (No response.)

11          THE COURT:  Okay.  All right.  Any defendants on the

12     line that we missed?  At this juncture I've registered no

13     defendants participating in the call.

14          All right.  With respect to Mr. Hinton, Mr. Lipuma,

15     we'll see where we stand in terms of once we've covered the

16     group information, we'll address the government's waiver

17     filing.  And obviously we're going to need Mr. Hinton at some

18     point in that process.  We'll see if he joins in during the

19     course of this call or not.

20          All right.  The first thing I want to do is it's been

21     a few months now since we've had a general status in this

22     case.  I would like to hear, and I'll start with the

23     government, what the parties' perspectives on where things

24     stand generally before we start talking about more particular

25     questions and issues.

1    Ms. Wong or Mr. Mower, you want to summarize where

2 things stand from the government's perspective?

3    MS. WONG:  Yes, Your Honor.  This is Sheri Wong

4 speaking.

5    At this point, since the last time we were before the

6 Court, the government has had substantive plea discussions

7 with a number of defense attorneys about whether their

8 clients' cases can be resolved short of trial.  And I think we

9 can indicate at this point that we've had those discussions

10 with seven of the defendants' attorneys thus far.

11    Based on the extent of the conversations that we've

12 had, I believe we'll be able to have a firmer sense of whether

13 we'll be able to reach a resolution short of trial for those

14 particular defendants, and I think we can report a firmer

15 status on that in the next two to three weeks.

16    We do know that there is a trial date set for June,

17 and I think we've had discussions with various defense

18 attorneys about the status of that trial date.  I think where

19 we are at this point is we --

20   (Audio interruption.)

21    THE COURT:  Hold on, Ms. Wong.

22    This is Judge Tharp.  Do we have the MCC on the line

23 now?

24    DEFENDANT HINTON:  No, this is Carey Hinton.

25    THE COURT:  Okay.  Mr. Hinton, what facility are you

1    housed in right now?

2              DEFENDANT HINTON:  I'm in Kankakee.

3              THE COURT:  Okay.  All right.  We lost you for a

4    moment, but we've got you.  Mr. Lipuma, your attorney, is on

5    the line.  So just stand by and we will resume our discussions

6    in a minute.

7              DEFENDANT HINTON:  Okay.

8              THE COURT:  All right.  Ms. Wong, I'm sorry.  If you

9    would pick back up where you left off.

10             MS. WONG:  No problem.

11             Given the number of defendants, given that the number

12   of defendants going to trial may affect potentially the trial

13   date and also perhaps the number of trials and also in light

14   of the parties' ongoing discussions, particularly given that

15   we might have confirmation of the trial landscape in the next

16   two to three weeks, we would request and suggest setting this

17   case over for another status perhaps, you know, the week of

18   the 7th at which time we can provide a more solid update

19   regarding the status of which defendants may be proceeding to

20   trial and which may be resolved short of trial.

21             We can addresses the other issues regarding

22   outstanding pretrial motions if the Court would like, or we

23   can stay on this topic about the trial schedule if the Court

24   would like more detail.

25             THE COURT:  All right.  Well, let's -- let me hear

1    from any defendant who wants to supplement the government's

2    report in terms of the status of things.

3           Any defense counsel want to weigh in?

4           MR. LIPUMA:  Judge, this is Frank Lipuma for Carey

5    Hinton.

6           Judge, we did receive a draft proposed plea agreement

7    from the government last week, and I did send it off to my

8    client last week as well.  I haven't had an opportunity to

9    discuss it with him yet.  But it is something we would like to

10    have time to consider, discuss and then report back to court

11    whether we're going to go forward with the change of plea or

12    not.

13           And that also ties in, Judge, to a couple of motions

14    that we have pending with the Court, a *Brady/Giglio* motion and

15    also a motion to suppress DNA evidence.  The government by

16    agreement filed a motion to stay briefing on those motions

17    while we tried to resolve this case, and the Court granted

18    that so briefing has been stayed on those motions.  And I

19    spoke with Ms. Wong earlier today, and we would agree to

20    continue the stay on those motions while we try and pursue

21    plea negotiations and try to resolve this case.

22           THE COURT:  All right.  Thank you.

23           Anybody else?

24           MS. GAMBINO:  Your Honor, this is Andrea --

25           MR. KUTNICK:  Your Honor --

1    (Unreportable crosstalk.)

2         THE COURT:  One of you start, and the other one can

3    follow.

4         MR. KUTNICK:  Go ahead, Andrea.  Go ahead.

5         MS. GAMBINO:  This is Andrea Gambino on behalf of

6    Rakim Asad.

7         We have had some discussion with respect to a plea

8    resolution.  We anticipate getting something in writing in the

9    next couple of weeks.  So I would support the request to have

10   another status in two or three weeks.

11        THE COURT:  All right.

12        Mr. Kutnick, was that you?

13        MR. KUTNICK:  Yes, it was, Your Honor.  On behalf of

14   Derrick McNeal, we have a severance motion pending which would

15   determine our course of action on the rest of the case.

16        THE COURT:  All right.

17        MR. KUTNICK:  But otherwise I agree with a status to

18   determine the trial.

19        THE COURT:  All right.  Anyone else want to weigh in?

20   (No response.)

21        THE COURT:  All right.  I agree that we need a bit

22   more clarity in terms of what we would be talking about in

23   terms of going to trial.  So to the extent that we might get

24   that in the next several weeks, I think we ought to see where

25   that -- see where we are at that point.  So having a status

1    sooner rather than later I think makes some sense.

2           So let me suggest a further status on February 9th at

3    1:30 p.m.  That's a Wednesday.

4           MS. WONG:  Judge, I believe --

5           THE COURT:  This would be a telephone status

6    obviously.

7           Go ahead.

8           MS. WONG:  Your Honor, this is Sheri Wong speaking.

9           The government has a sentencing hearing the afternoon

10   of February 9th at 1:30.  Could we possibly schedule this for

11   either the 8th or the 10th?

12          THE COURT:  Bear with me.

13          We can't do it on the 8th or the 10th.  We could do

14   it earlier in the day on the 9th, however.  9:30 on the 9th?

15          MS. WONG:  Earlier on the 9th would work for the

16   government.

17          THE COURT:  All right.  Anybody else have any

18   problems with the February 9th, Wednesday, at 9:30 a.m. for a

19   further status?

20     (No response.)

21          THE COURT:  Okay.  Hearing no objections or issues

22   with that date, we'll set a further status hearing on

23   February 9th at 9:30 a.m.  That will be by telephone.  If you

24   wish your client to participate and they're in custody, you

25   need to contact Alberta two weeks before that status hearing

1   so that she can make the arrangements to have them available

2   to participate. That assumes that COVID restrictions permit

3   participation. Right now we're under very significant

4   constraints at least at the MCC on getting people to phones

5   and video. So if you want your client in custody to

6   participate or your client wants to participate, let Alberta

7   know, and we can try to make those arrangements. Obviously

8   anyone on bond is welcome to dial in as counsel does.

9         All right. There's a couple of specific things I

10   want to just confirm and address in no particular order here.

11         Going back through the docket, the arraignment on the

12   superseding indictment in this case, some were done by

13   magistrate judges, some were done by me. The record -- the

14   docket record doesn't reflect that the Due Process Protection

15   Act advisories were provided at all arraignments. Some

16   notations reflect that they were. Others don't say anything.

17         So to cure that problem, I want to make sure that

18   everyone understands that pursuant to Federal Rule of Criminal

19   Procedure 5(f)(1), the Court is confirming the prosecutor's

20   continuing obligation under *Brady v. Maryland*, 373 United

21   States 83 and its progeny, to disclose information favorable

22   to the defendants that is material to guilt or punishment.

23   Failure to disclose may result in various consequences

24   including, but not limited to, exclusion of evidence, adverse

25   jury instructions, mistrial, dismissal of charges, vacatur of

1    a conviction or guilty plea, disciplinary action against the

2    prosecution and contempt proceedings.  That is the standard

3    Rule 5(f)(1) language.  That will be entered on the docket as

4    well in written form to comply with the requirements of that

5    rule.

6             Okay.  Let's see.  What else?

7             All right.  In terms of a jury trial, obviously we

8    will be discussing that further at the next status hearing.

9    But we are set for trial on June 6th, "set for trial" being a

10   term we use loosely these days because there's no guarantee

11   that even if that's what we want to do that we will be able to

12   do it given the vagaries and restrictions under the COVID

13   situation.  And I want to make sure everyone understands that.

14            THE CLERK:  Judge, this is your clerk.  Could you ask

15   Mr. Hinton to put his phone on mute?

16            THE COURT:  Could you ask them to put your phone on

17   mute?  Thank you.

18            DEFENDANT HINTON:  Hey, they said put it on mute for

19   me.

20            THE COURT:  All right.  Bear with me.

21            DEFENDANT HINTON:  Hey, excuse me.  They don't got no

22   mute button.  They only got a hold button.

23            THE COURT:  Okay.  I'm going to put you on mute then.

24            DEFENDANT HINTON:  All right.

25            THE COURT:  And we'll get back to you when we discuss

1    your situation.  Okay?

2           DEFENDANT HINTON:  All right.

3           THE COURT:  Okay.  Sorry.

4           All right.  So we will discuss the trial date issue

5    at our next status hearing in more detail, but I did want to

6    make sure everyone knows that that date is still on the books,

7    and to the extent you're looking down the road, you should be

8    assuming that that trial date is going to go forward at this

9    point.

10          All right.  I wanted to confirm the pretrial motion

11   situation.  Mr. Lipuma, you've confirmed that you're in favor

12   of continuing to stay briefing on the motions filed by

13   Mr. Hinton.  So we've addressed that.

14          Mr. Kutnick, your motion I think is fully briefed, as

15   is Ms. Domph's motion, so I will try to address those as

16   quickly as I can.

17          There's also been a motion filed by Akeem Asad to

18   dismiss Count Two of the indictment.  That -- we have a

19   briefing schedule in place on that motion.  The government's

20   response is due February 15th, and the reply is due March 8th.

21          And then we have the filing by the government

22   relating to requesting a conflict waiver colloquy with

23   Mr. Hinton which we'll address in a few minutes here.

24          Other than what I've detailed, are there any other

25   pretrial motions that are pending that I had missed in my

1    review of the docket?

2            MS. WONG:  Your Honor, this is Sheri Wong speaking.

3            Not from the government's end.  I think the Court has

4    recounted all the pending pretrial motions.

5            THE COURT:  All right.  I don't hear any defense

6    counsel piping up that I've missed their motion.

7            All right.  So those are the pending motions.  We'll

8    proceed on the course that I've just outlined.  I do want to

9    make clear we're going to continue to exclude time through the

10   next status hearing in light of the complexity of this case,

11   the difficulty and the various scheduling issues inherent in a

12   trial potentially of 12 defendants which are exacerbated

13   tremendously by the restrictions we're operating under due to

14   the COVID pandemic, and as well we need to address now one,

15   two, three, four, at least five pending motions as to the

16   complexity of the situation as well.

17           So I'm going to continue to exclude time through the

18   next status hearing on those bases.  I find the ends of

19   justice served by excluding time on those bases outweigh the

20   public and the defendants' interest in a speedy trial.

21           All right.  Let's see what else we've got here.  I

22   think other than the discussion relating to Mr. Hinton and the

23   potential conflict waiver there, that's it for my agenda here.

24   Is there anything else anyone wanted to raise other than the

25   situation relating to Mr. Hinton?

1      (No response.)

2              THE COURT:  All right.  Hearing nothing then --

3              MS. WONG:  This is Sheri Wong speaking.

4              THE COURT:  I'm sorry.  Go ahead, Ms. Wong.

5              MS. WONG:  I was going to say nothing from the

6      government.

7              THE COURT:  Okay.  All right.  I hear nothing from

8      the defense side either so you're welcome to stay on while we

9      discuss Mr. Hinton's situation if you wish.  You're also

10     welcome to sign off at this time.  So we'll give everybody a

11     few seconds to sign off, and then Mr. Lipuma, Mr. Hinton, stay

12     onboard, and the government's counsel should stay on the line

13     and we'll discuss that situation.

14             All right.  Thank you.  We'll talk to the rest of you

15     February 9th.

16             Okay.  Everybody that's going is probably gone.

17             All right.  I received and have reviewed the

18     government's motion to conduct an inquiry as to a potential

19     conflict of interest.  The predicate of that motion is

20     Mr. Lipuma's representation not only of Mr. Hinton but an

21     individual named Sincere, and is that how that first name is

22     pronounced?

23             MS. WONG:  That's correct, yes, Sincere.

24             THE COURT:  Sincere Brannon.

25             Mr. Lipuma, I know there's similar filings have been

1   made in the case in which Mr. Brannon is the defendant.  And I

2   have looked at that docket and so I have seen the supplemental

3   filings that were filed by the government and by Mr. Lipuma on

4   behalf of Mr. Brannon in 19 CR 428 at the request of Judge

5   Norgle.  Those have been filed in that case.  They're not of

6   record yet in this case.

7          But I take it from that submission, Mr. Lipuma, and

8   from the fact that the government's motion includes as an

9   attachment a signed waiver, written waiver by Mr. Hinton that

10  Mr. Hinton is not opposed having a waiver of colloquy

11  conducted and the Court determining whether he had knowingly

12  and voluntarily waived his right to counsel that is not

13  wavering under a potential conflict.

14         MR. LIPUMA:  Yes, Your Honor.  We have had extensive

15  talks, both Mr. Hinton and I and Mr. Brannon and I, and they

16  certainly know each other, Judge.  There's no hiding that

17  fact.  But as set forth in the pleading we filed I believe

18  yesterday with Judge Norgle, there is really -- there's no

19  actual conflict of interest here and there is really no

20  potential for a conflict of interest here because as I have

21  informed Ms. Wong, we did our homework on this, Judge, and

22  wanted to do this the right way through professional ethics as

23  well.  But neither of the defendants in these cases are

24  interested in cooperating with the government against the

25  other.  And one of the principal reasons behind this, Judge,

1   first of all, is the set of charges are completely different.

2   Mr. Brannon is charged with a single day's set of offenses

3   that occurred during a search warrant of Harriette McPherson's

4   home, one of the codefendants in this case, and Rakim Asad,

5   who happens to be Sincere Brannon's brother.

6         So there's quite a lot of interconnectedness here,

7   but the charges against Sincere are very limited, and we're

8   hopeful for a reasonable resolution in that case.  And we just

9   don't see any potential for a conflict of interest at all.  So

10  we had signed the waiver of the conflict -- Mr. Hinton has

11  signed the waiver of conflict of interest that followed

12  several occasion where's we discussed it and I explained it to

13  him.  And he's very adamant that he does not want to cooperate

14  with the government.  I personally see no way that I would try

15  to, you know, spare one client at the expense of another

16  especially when they're in different cases.  And even though

17  we are not objecting to this inquiry under Rule 44(c), I think

18  the government's interests are legitimate.  They want to

19  protect their record.  But at the same time, I do want to

20  point out, as I did in Judge Norgle's inquiry, that Rule 44(c)

21  really is inapplicable by the express terms of the rule.

22        Nevertheless, because we are both interested, both

23  clients are interested in pursuing reasonable resolutions of

24  this case and after thorough discussions, it's evidently clear

25  to us that Mr. Hinton has voluntarily, knowingly and

1    intelligently waived any potential for a conflict of interest,

2    and he's certainly available for the Court to inquire further

3    with him, Judge.  He certainly has read everything that I've

4    sent to him, and like I said, I have reached out to him on

5    multiple occasions at Kankakee County Jail.  We discussed this

6    and other things.  And we respectfully request the Court to

7    accept his waiver and allow his counsel of record to continue

8    to represent him.

9         THE COURT:  All right.  Well, let me ask the

10   government to -- its submission suggests that it is able and

11   willing to provide more information about the factual overlap

12   between the charges against Mr. Brannon and the charges

13   against Mr. Hinton.  And I certainly understand that the

14   charges against Mr. Brannon are in a separate case.  No. 1,

15   that doesn't rule out the possibility there are connections

16   there whether or not obvious on their face, but obviously the

17   government's position that Mr. Brannon is an unindicted

18   co-conspirator in the conspiracy that's charged in this case

19   in Count Two of the superseding indictment does certainly

20   raise the spectra of a potential conflict of interest with

21   respect to the charge, at least that charge that Mr. Hinton is

22   facing.

23        So Ms. Wong, Mr. Mower, what can you tell me in terms

24   of the factual overlap between the conduct that's at issue

25   with respect to Mr. Brannon and the conduct at issue with

1    respect to Mr. Hinton?

2         MS. WONG:  Yes, Judge.  We can certainly provide some

3    additional details.

4         As we note in our motion and as the Court is aware,

5    Mr. Hinton here is charged in a count -- two counts of the

6    superseding indictment.  Count One he's alleged to have been a

7    member of the LAFA street gang who participated in the conduct

8    of that gang's affairs which included, among other activities,

9    narcotics trafficking and then Count Two alleges that

10   Mr. Hinton, several co-defendants, and then other indicted

11   co-conspirators participated in a conspiracy to possess with

12   intent to distribute and then distribute narcotics in Chicago,

13   Minnesota, and elsewhere.  And as Mr. Lipuma noted,

14   Mr. Brannon is charged in a separate case with narcotics and

15   firearm offenses stemming from the seizure of firearms and

16   narcotics on May 16, 2019.

17        In terms of the government's investigation into the

18   LAFAs, the government uncovered evidence during that

19   investigation that Mr. Brannon was either a LAFA member or a

20   LAFA associate who had and has close ties to a number of the

21   charged LAFAs, including the defendant, Mr. Hinton, and other

22   co-defendants charged in this pending case.

23        Then as part of the LAFAs' specific narcotics

24   activities, during the government's investigation, we

25   uncovered evidence that Mr. Brannon was a participant in the

1   narcotics conspiracy in which Mr. Hinton is currently charged.

2   And if the government's case were to proceed to trial, the

3   government may elect at that trial to present evidence of

4   Mr. Brannon's participation in the narcotics conspiracy which

5   would include intercepted wire calls and surveillance showing

6   Mr. Brannon making drug deliveries to customers of

7   co-defendant Rakim Asad.

8          In addition, the government recovered from a search

9   of Rakim Asad's residence a drug ledger with Mr. Brannon's

10  fingerprints on it which we would argue connects him to that

11  drug conspiracy.

12         Now, it's true that Mr. Brannon is not currently

13  charged in the present case as a co-conspirator with

14  Mr. Hinton, but there is, given what we've outlined thus far,

15  sufficient factual and evidentiary overlap here that we felt

16  it appropriate to raise the potential conflict with the Court

17  and to have the colloquy with Mr. Hinton to ensure that he has

18  acknowledged and he understands that he has the right to

19  conflict-free representation, that there may be this potential

20  conflict with Mr. Lipuma's representation with him and

21  Mr. Brannon.

22         We believe -- we are not seeking to disqualify

23  Mr. Lipuma from either representation.  We would just request

24  that the Court here confirm the content of Mr. Hinton's

25  written waiver and ensure that he has, as Mr. Lipuma has, you

1    know, represented and we trust that to be the case that he's

2    discussed this issue with Mr. Lipuma, that he understands the

3    contents of the conflict of interest waiver and that he's, in

4    fact, you know, signed and dated that waiver.  That's all

5    we're asking for here.

6              THE COURT:  All right.

7              Anything else you want to add, Mr. Lipuma?

8              MR. LIPUMA:  No, Your Honor.  I think it's been

9    pretty well covered by Ms. Wong and myself.  And I appreciate

10   the Court actually taking the step of reading the pleadings

11   that we filed in the other case.  So thank you for taking that

12   extra step, Judge.

13             THE COURT:  All right.

14             Ms. Wong, let me ask you, you said during the course

15   of the investigation this additional evidence was developed

16   that in the government's view connects Mr. Brannon to the

17   Count Two conspiracy.  That, No. 1, answers one of my

18   questions which was -- or at least partly answers one of my

19   questions which is whether something new has developed in

20   terms of the government's investigation that accounts for the

21   motion now which we're almost two years into the superseding

22   indictment.

23             And I guess the other aspect I want to understand

24   better is whether there's any evidence that the government has

25   developed that reflects or could provide the foundation for an

1    argument as to interaction between Mr. Brannon and Mr. Hinton

2    in connection with the conspiracy charged in Count Two.

3          MS. WONG:  I'll take the first part of your question.

4          There's no new evidence that the government has

5    uncovered with respect to the Count Two drug conspiracy.  The

6    evidence that the government would point to, as I just

7    outlined, is evidence that would date back to I believe 2017,

8    2016, 2017.

9          In terms of the timing, as we have indicated, we

10   don't believe that there's an actual conflict here and that's

11   why we have not moved to disqualify Mr. Lipuma.  We believe

12   there's just the potential conflict given the development of

13   plea negotiations which have begun to be more concrete in the

14   last couple of months.  That's why we felt it appropriate at

15   this time to bring the motion and raise it with the Court

16   given that the plea negotiations have progressed to this

17   particular stage.

18         THE COURT:  All right.  And the second part, just to

19   make it easier for you in your recollection here is the

20   outline, you know, fingerprints on the drug ledger and some

21   involvement with other defendants, is there any evidence of,

22   you know, interaction specifically relating to the conspiracy

23   or arguably relating to the conspiracy between Mr. Brannon and

24   Mr. Hinton?

25         MS. WONG:  Judge, not that I am aware of, no.

1    THE COURT: All right. Okay. Well, there is

2    certainly the potential for a conflict of interest here. I

3    understand Mr. Lipuma's perspective having, you know,

4    investigated the facts, having spoken with Mr. Brannon and

5    Mr. Hinton. I understand the position that in light of the

6    information available to him he perceives that there is not a

7    potential conflict of interest, but I think there's clearly

8    potential for conflict of interest regardless of what the

9    facts appear to be at this point in time. You know, it's

10   correct that Rule 44(c) does not by its terms apply because

11   Mr. Brannon is not a defendant in this case. But given the

12   government's position and the evidence supporting that

13   position to suggest that Mr. Brannon could be a co- --

14   unindicted co-conspirator with respect to the conspiracy

15   charged in Count Two, certainly the concerns that animate

16   Rule 44(c) are present virtually to the same degree that they

17   would be present if Mr. Brannon were, in fact, a charged

18   co-defendant in that count.

19         So I think it's appropriate for us to proceed on the

20   basis that there is a potential for conflict of interest here.

21   Such conflicts can be waived assuming that the waiver is

22   knowing and voluntary, and I think it's appropriate -- it's

23   certainly appropriate to conduct that colloquy of Mr. Hinton

24   to make sure he understands the issues and the concerns that

25   Mr. Lipuma's representation of both he and Mr. Brannon raised.

1        So I'm prepared to go through that colloquy now.

2    Alternatively, if on the basis of anything that we've

3    discussed to this point if we want to -- Mr. Lipuma, if you

4    want to have any further dialogue with Mr. Hinton and

5    Mr. Brannon, I'll certainly give you an opportunity to do

6    that, or if you wanted to file anything in writing in response

7    to the government's filing, I would certainly give you that

8    opportunity as well.

9        How would you like to proceed?

10       MR. LIPUMA:  Thank you, Judge, for the opportunity.

11   I don't think we need to file anything further, Judge, and

12   Mr. Hinton and I truly have discussed this on multiple

13   occasions in-depth, Judge.  So I think we're prepared to

14   proceed today if the Court has time.

15       THE COURT:  All right.  I do have time, and we'll

16   march forward.

17       All right.  Mr. Hinton, I muted you, so I'm going to

18   unmute you.  Bear with me.

19       Okay.  Mr. Hinton, can you hear me?

20       DEFENDANT HINTON:  Yes, sir.

21       THE COURT:  Okay.  I know you can't do anything about

22   the background noise probably, but keep your -- we'll not put

23   you on mute now because I need to ask you some questions to

24   make sure you understand what you're doing here.

25       DEFENDANT HINTON:  Okay.

1    THE COURT:  I'm going to go through these questions.
2    It's important that you answer them truthfully and accurately
3    because, No. 1, I'm going to put you under oath, and it's
4    going to be a crime to make false statements under oath so you
5    don't want to do that.  And, No. 2, I need your truthful,
6    accurate answers to these questions in order to make the
7    determinations that I need to make with respect to
8    Mr. Lipuma's representation.  As we go along, if there's
9    anything I'm asking you that you don't understand or you want
10   me to clarify, just say so, and I will try to do that.  All
11   right?
12       DEFENDANT HINTON:  Okay.
13       THE COURT:  All right.  The first thing I'm going to
14   do is swear you in.
15       Do you swear or affirm that any statements you make
16   in the course of this proceeding today will be the truth, the
17   whole truth, and nothing but the truth?
18       DEFENDANT HINTON:  Yes, sir.
19       THE COURT:  All right.  Would you state your full
20   name, Mr. Hinton.
21       DEFENDANT HINTON:  Carey Ramon Hinton.
22       THE COURT:  And how old are you, sir?
23       DEFENDANT HINTON:  29.
24       THE COURT:  Are you married?
25       DEFENDANT HINTON:  No, sir.

 1          THE COURT:  Do you have children?

 2          DEFENDANT HINTON:  Yes, sir.

 3          THE COURT:  How many kids do you have?

 4          DEFENDANT HINTON:  One.

 5          THE COURT:  Okay.  How old is he or she?

 6          DEFENDANT HINTON:  He's 8.  It's a son.  It's a he.

 7          THE COURT:  All right.  Your son?

 8          DEFENDANT HINTON:  Yes, sir.

 9          THE COURT:  All right.  Before you were taken into

10  custody, what city or town did you live in?

11          DEFENDANT HINTON:  Chicago, Illinois.

12          THE COURT:  All right.  Have you lived in Chicago

13  most of your life?

14          DEFENDANT HINTON:  Yes, sir.

15          THE COURT:  What's the highest level of formal

16  education you've completed?

17          DEFENDANT HINTON:  GED.

18          THE COURT:  All right.  You have a GED?

19          DEFENDANT HINTON:  Yes, sir.

20          THE COURT:  All right.  How far did you go in high

21  school before you dropped out?

22          DEFENDANT HINTON:  Senior year.

23          THE COURT:  Senior year?

24          DEFENDANT HINTON:  Yes, sir.

25          THE COURT:  Okay.  So you can read and write English?

1     DEFENDANT HINTON:  Yeah.

2     THE COURT:  Okay.  Before you were taken into

3 custody, did you have a job?

4     DEFENDANT HINTON:  No, sir.

5     THE COURT:  I'm sorry.  I couldn't understand that.

6     DEFENDANT HINTON:  No, I said no.

7     THE COURT:  Okay.  During your -- since you've

8 dropped out of high school between then and now, have you been

9 employed at various times?

10     DEFENDANT HINTON:  Have I been what?

11     THE COURT:  Have you had a job ever in your adult

12 life?

13     DEFENDANT HINTON:  No.

14     THE COURT:  Okay.  Do you feel like you're in good

15 health?

16     DEFENDANT HINTON:  Yes, sir.

17     THE COURT:  All right.  Are you presently taking any

18 prescription medications?

19     DEFENDANT HINTON:  No, sir.

20     THE COURT:  Have you ever been under the care of any

21 mental health professional?

22     DEFENDANT HINTON:  No, sir.

23     THE COURT:  All right.  Have you had any drugs or

24 alcohol in the last 24 hours?

25     DEFENDANT HINTON:  No, sir.

1    THE COURT:  Is there any reason that you don't feel

2  capable of making significant decisions here this afternoon?

3    DEFENDANT HINTON:  No, sir.

4    THE COURT:  All right.  You understand -- you

5  understand that the nature of what we're talking about is

6  whether Mr. Lipuma can continue to represent both you and

7  Mr. Brannon?

8    DEFENDANT HINTON:  Yes, sir.

9    THE COURT:  Okay.  And are you prepared to address

10  questions that relate to that topic?

11    DEFENDANT HINTON:  Yes, sir.

12    THE COURT:  Okay.

13    Mr. Lipuma, are you aware of any reason that

14  Mr. Hinton is not competent to proceed here with this waiver

15  colloquy this afternoon?

16    MR. LIPUMA:  I don't have any doubts about his

17  competency, Your Honor.

18    THE COURT:  Ms. Wong, Mr. Mower, does the government

19  have any reason to doubt Mr. Hinton's competency to waive his

20  right to conflict-free representation?

21    MS. WONG:  Your Honor, the government has no doubts

22  about Mr. Hinton's competency.

23    THE COURT:  Okay.

24    All right.  Mr. Hinton, what's the name of the

25  attorney who represents you in this case?

1    THE DEFENDANT:  Francis Lipuma.

2    THE COURT:  All right.  And are you satisfied with

3 the advice and counsel that Mr. Lipuma has given you as your

4 attorney?

5    DEFENDANT HINTON:  Yes, sir.

6    THE COURT:  Is there anything you think Mr. Lipuma

7 should have done or should be doing for you that he has not

8 been doing for you?

9    DEFENDANT HINTON:  No, sir.

10    THE COURT:  And do you want Mr. Lipuma to continue to

11 represent you in this matter?

12    DEFENDANT HINTON:  Yes, sir.

13    THE COURT:  All right.  In order for Mr. Lipuma to

14 continue to represent you in this matter, I need to make sure

15 that you understand some rights that you have and that you're

16 giving up those rights and you know what you're doing in

17 giving up those rights.

18    DEFENDANT HINTON:  Okay.

19    THE COURT:  You have a right under the Sixth

20 Amendment of the United States Constitution to effective

21 assistance of counsel at all stages during the course of the

22 criminal trial.  Do you understand that?

23    DEFENDANT HINTON:  Yes, sir.

24    THE COURT:  All right.  What we're doing here is I

25 need to make sure that you are fully advised about a potential

1   conflict of interest that Mr. Lipuma may have in representing

2   you.  A conflict of interest is basically a situation that

3   might result in your attorney having divided loyalty.  Do you

4   understand that's what a conflict of interest is?

5           DEFENDANT HINTON:  Yes, sir.

6           THE COURT:  All right.  Your attorney, Mr. Lipuma,

7   owes you an undivided loyalty.  By that I mean that his sole

8   concern is supposed to be your welfare and your interest.

9   That's his duty to look after as your attorney.  Do you

10  understand that?

11          DEFENDANT HINTON:  Yes, sir.

12          THE COURT:  All right.  Now, I've been advised by the

13  government that Mr. Lipuma, in addition to his representation

14  of you, also represents another individual who is a defendant

15  in a separate criminal case.  That individual is Sincere

16  Brannon.  Mr. Brannon is charged in that case with possession

17  with intent to distribute marijuana and possession of a

18  firearm in connection with drug trafficking.

19          The government has also advised the Court that it

20  considers Mr. Brannon to be an uncharged co-conspirator in the

21  drug conspiracy that you are charged with in Count Two of the

22  superseding indictment in this case.  That means that the

23  government thinks you conspired with Mr. Brannon as well as

24  with the other defendants who are charged in Count Two even

25  though the government has not charged Mr. Brannon in

1    participating in that conspiracy.  Do you understand that?

2              DEFENDANT HINTON:  Yes, sir.

3              THE COURT:  All right.  You should also understand

4    that just because Mr. Brannon has not been charged with

5    participating in that conspiracy does not necessarily mean

6    that he won't be charged with participating in that

7    conspiracy.  The government could still seek to supersede

8    again to add Mr. Brannon to that charge or to add other

9    charges or other defendants in that charge.  Do you understand

10   that?

11             DEFENDANT HINTON:  Yes, sir.

12             THE COURT:  All right.  Now, I want to make sure you

13   understand that the charges you're facing in this case are

14   serious charges.  In Count One, you're charged with

15   participating in a racketeering enterprise, or conspiring to

16   participate in a racketeering enterprise by, among other

17   things, attempting to murder another individual.  You

18   understand that that's the nature of the charge in Count One?

19             DEFENDANT HINTON:  Yes, sir.

20             THE COURT:  And in Count Two, you're charged with

21   conspiring to possess with intent to distribute and distribute

22   controlled substances.  You understand that's the nature of

23   the charge you're facing in Count Two?

24             DEFENDANT HINTON:  Yes, sir.

25             THE COURT:  And each of those counts -- and,

1    Ms. Wong, you can correct me if I've got this wrong, but each

2    of these counts carries a maximum term of imprisonment for you

3    of up to 20 years.  So if you're convicted of these crimes,

4    you could be imprisoned for up to 40 years.  Do you understand

5    that?

6              DEFENDANT HINTON:  Yes, sir.

7              MS. WONG:  Judge, if I could.

8              THE COURT:  Yes.

9              MS. WONG:  I believe on Count Two, the maximum term

10   of imprisonment is 40 years.

11             THE COURT:  I didn't think the quantity element was

12   applicable to Mr. Hinton.

13             MS. WONG:  No, but based on the conspiracy charge, I

14   believe the maximum is 40 years.  There's no mandatory minimum

15   that's alleged.

16             THE COURT:  Okay.

17             So, Mr. Hinton, I stand corrected.  On Count Two, the

18   maximum penalty is 40 years.  So if you're convicted on both

19   counts, you could face a sentence of up to 60 years of

20   imprisonment.  Do you understand that?

21             DEFENDANT HINTON:  Yes, sir.

22             THE COURT:  Okay.  All right.  And you're aware, I

23   take it, that Mr. Lipuma represents Mr. Brannon?

24             DEFENDANT HINTON:  Yes, sir.

25             THE COURT:  All right.  And you had an opportunity to

1    discuss that issue with Mr. Lipuma?

2              DEFENDANT HINTON:  Yes, sir.

3              THE COURT:  All right.  And by virtue of his

4    representation of Mr. Brannon, do you understand that

5    Mr. Lipuma owes the same duty of loyalty to Mr. Brannon that

6    he owes to you?

7              DEFENDANT HINTON:  Yes, sir.

8              THE COURT:  All right.  Do you understand those

9    duties of loyalty that he owes to Mr. Brannon and to you may

10   create a conflict, a situation where Mr. Lipuma has divided

11   loyalties?  Do you understand that?

12             DEFENDANT HINTON:  Yes, sir.

13             THE COURT:  All right.  I want to give you some

14   examples of how that might -- could play out.

15             A lawyer who represents two defendants in a common

16   investigation or case may not investigate the cases thoroughly

17   if there's a reason to think doing so will harm the interest

18   of the other -- of one of the two defendants, or in this case

19   I'm going to phrase all of this in the context of you and

20   Mr. Brannon.  So it's possible theoretically, and I -- in

21   giving you these examples, I'm not suggesting that this would

22   be the case with Mr. Lipuma, but these are the kinds of

23   problems and conflicts that can arise when an attorney

24   represents two clients in a related criminal proceeding.

25             Do you understand that Mr. Lipuma might not

1    investigate the cases thoroughly if there's reason to think

2    that doing so would harm Mr. Brannon's interest?

3              DEFENDANT HINTON:  Yes, sir.

4              THE COURT:  Do you understand that if Mr. Brannon

5    were to say something helpful about you to Mr. Lipuma but it

6    was harmful to him, Mr. Lipuma may not be able to share that

7    information with you or use it to help you because it's

8    privileged and may harm Mr. Brannon.  Do you understand that?

9              DEFENDANT HINTON:  Yes.  Yes, sir.

10             THE COURT:  So in other words, if Mr. Lipuma had a

11   conversation with Mr. Brannon where he said Carey Hinton

12   wasn't involved at all, it was all me, I did all that stuff

13   that's charged in there, Mr. Lipuma would not be able to tell

14   you that.  He would not be able to use that information to

15   help you defend against the charges.  Do you understand that?

16             DEFENDANT HINTON:  Yes, sir.

17             THE COURT:  All right.  Do you understand that if the

18   government were to offer a deal to you to cooperate against

19   Mr. Brannon and possibly other defendants, he would not be

20   able to entertain that possibility and you might not even hear

21   about it?  Do you understand that?

22             DEFENDANT HINTON:  Yes, sir.

23             THE COURT:  You understand there could be evidence

24   that the government offers at trial against you that your

25   lawyer may not object to because it's helpful to Mr. Brannon,

1    or there may be evidence helpful to you that Mr. Lipuma

2    doesn't offer into evidence because it's harmful to

3    Mr. Brannon.  You understand that's a possibility?

4              DEFENDANT HINTON:  Yes, sir.

5              THE COURT:  All right.  Do you understand if the case

6    went to trial you would have the right to testify or not

7    testify if you so chose?  Do you understand that Mr. Lipuma's

8    advice about whether you should testify or not might be

9    tainted because of concerns about what you may be asked about

10   Mr. Brannon's conduct?

11             DEFENDANT HINTON:  Yes, sir.

12             THE COURT:  So in other words, Mr. Lipuma might be in

13   a situation where he doesn't give you the real benefit of his

14   advice about whether it's good for you to testify or not.  He

15   might be compelled to think about whether it's good for

16   Mr. Brannon for you to testify or not.  Do you understand that

17   possibility?

18             DEFENDANT HINTON:  Yes, sir.

19             THE COURT:  So do you understand that if Mr. Brannon

20   were to testify either in his case or if he was ultimately

21   charged in this case, if he were to testify and say something

22   harmful about you, Mr. Lipuma might not be able to effectively

23   cross-examine Mr. Brannon because he can't use all the

24   information he has about Mr. Brannon because it's privileged?

25             DEFENDANT HINTON:  Yes, sir.

1    THE COURT:  Do you understand that during a trial or

2  during sentencing or even in plea negotiations with the

3  government, Mr. Lipuma might not be able to argue or might not

4  want to argue that Mr. Brannon is more culpable than you

5  because that would hurt Mr. Brannon?

6    DEFENDANT HINTON:  Yes, sir.

7    THE COURT:  All right.  So in other words, it's a

8  common argument for a lawyer to say, look, my client was a

9  small fish compared to all these other people, and his

10  sentence should be much lower, or you should cut him a much

11  better deal.  Mr. Lipuma, by virtue of his dual

12  representation, wouldn't be able to make that argument if he

13  was comparing you to Mr. Brannon.  He wouldn't be able to say,

14  look, Brannon was really the guy that was in charge here or he

15  was the one who was really doing the serious misconduct, not

16  my guy.  He wouldn't be able to make that argument.  Do you

17  understand that?

18    DEFENDANT HINTON:  Yes, sir.

19    THE COURT:  All right.  You also understand that it's

20  conceivable that Mr. Lipuma could have financial incentive

21  arising from dual representation that lead him to favor

22  Mr. Brannon or that color his advice about whether he can

23  effectively represent you.  And by that I mean first,

24  Mr. Lipuma obviously makes more money if he represents you

25  both.  He gets paid by two defendants rather than one

1    defendant.  Do you understand that?

2            DEFENDANT HINTON:  Yes, sir.

3            THE COURT:  All right.  And you also understand that

4    Mr. Lipuma -- and, Mr. Lipuma, you can correct me if I'm

5    wrong.  But based on the docket, I understand that Mr. Lipuma

6    is retained by Mr. Brannon, meaning Mr. Brannon is paying him.

7    He is not appointed by the federal defender.

8            Is that correct, Mr. Lipuma?

9            MR. LIPUMA:  Yes, Judge, that's correct.  I have been

10   appointed in this case, and I was retained by Mr. Brannon back

11   in 2019.

12           THE COURT:  Okay.

13           So Mr. Lipuma is getting paid by Mr. Brannon.  That

14   could create a situation where Mr. Lipuma is reluctant to

15   withdraw from his representation of Mr. Brannon given the

16   adverse financial impact that could cause Mr. Brannon.  Do you

17   understand that possibility?

18           DEFENDANT HINTON:  Yes, sir.

19           THE COURT:  And do you understand, again, generally

20   that the advice Mr. Lipuma has given you about this conflict

21   issue might be colored by his desire to continue representing

22   both you and Mr. Brannon?

23           DEFENDANT HINTON:  Yes.  Yes, sir.

24           THE COURT:  All right.  Now, understanding that, the

25   Court is willing to appoint new counsel for the limited

1   purpose of advising you about this waiver, meaning it would be

2   a good idea, and I will appoint someone for you to talk to who

3   doesn't have any potential involvement in this case about

4   whether it's a good idea for you to continue with Mr. Lipuma

5   as your lawyer or not.  Do you want to discuss this issue with

6   independent counsel before proceeding?

7           DEFENDANT HINTON:  No, it's okay.

8           THE COURT:  All right.  Did you sign a waiver of a

9   conflict of interest form?

10          DEFENDANT HINTON:  Yes, sir.

11          THE COURT:  All right.  Before you signed that form,

12  did you review it carefully?

13          DEFENDANT HINTON:  Yes, sir.

14          THE COURT:  Did you discuss it with Mr. Lipuma?

15          DEFENDANT HINTON:  Yes, sir.

16          THE COURT:  Did you discuss it with any other lawyer?

17          DEFENDANT HINTON:  No, sir.

18          THE COURT:  Do you have any questions about the

19  waiver of the conflict of interest that you signed?

20          DEFENDANT HINTON:  No, sir.

21          THE COURT:  Did you sign it voluntarily?

22          DEFENDANT HINTON:  Yes, sir.

23          THE COURT:  Did anyone try to force you to sign it?

24          DEFENDANT HINTON:  No, sir.

25          THE COURT:  Did anyone promise you anything at all if

1    you did sign it?

2            DEFENDANT HINTON:  No, sir.

3            THE COURT:  Do you understand that that waiver, that

4    written waiver that you signed says that you want Mr. Lipuma

5    to continue to represent you even though you may have a

6    conflict of interest?

7            DEFENDANT HINTON:  Yes, sir.

8            THE COURT:  And do you understand that in waiving any

9    conflict of interest that Mr. Lipuma might have you're giving

10   up your right to argue that Mr. Lipuma rendered ineffective

11   assistance of counsel due to any conflict of interest that may

12   arise?  Do you understand that?

13           DEFENDANT HINTON:  Yes, sir.

14           THE COURT:  So in other words, you wouldn't be able

15   to argue for a new trial or reversal on appeal that Mr. Lipuma

16   did something that constituted ineffective assistance of

17   counsel because of or on account of this conflict of interest

18   that you might have.  You wouldn't be able to make that

19   argument.  Do you understand that?

20           DEFENDANT HINTON:  Yes, sir.

21           THE COURT:  So if Mr. Lipuma were to do something as

22   your lawyer during the investigation or the prosecution or the

23   trial of this case that you think favors Mr. Brannon's

24   interests over yours, you're not going to have a remedy for

25   that.  You're not going to be able to withdraw a guilty plea

1    or get a new trial based on that conflict.  Do you understand

2    that?

3              DEFENDANT HINTON:  Yes, sir.

4              THE COURT:  All right.  And, again, do you understand

5    that if you don't want Mr. Lipuma to continue to represent

6    you, the Court would appoint new counsel to represent you in

7    his place?  You understand that?

8              DEFENDANT HINTON:  Yes, sir.

9              THE COURT:  All right.  And, again, do you want the

10   Court to appoint an independent lawyer to advise you on this

11   issue?

12             DEFENDANT HINTON:  No, sir.

13             THE COURT:  Do you have any questions that you want

14   to ask the Court?

15             DEFENDANT HINTON:  No, sir.

16             THE COURT:  All right.  Ms. Wong, Mr. Mower, anything

17   else that the government would like to have included in this

18   colloquy?

19             MS. WONG:  Your Honor, in reviewing the written

20   waiver, there is an error in paragraph 3 that I just wanted to

21   bring to the Court's attention and to also Mr. Lipuma and

22   Mr. Hinton's attention.

23             I think we've covered this in the colloquy, but

24   paragraph 3 currently reads, "I have chosen Francis Lipuma as

25   my attorney in this matter."  And I think that should be

1  corrected to say that "Francis Lipuma has been appointed as

2  my attorney in this matter."  And I just wanted to raise

3  that --

4           THE COURT:  Okay.

5           MS. WONG:  -- to correct the record on that issue.

6           THE COURT:  All right.  For the record, I read that

7  to be a confirmation of his desire to continue with

8  Mr. Lipuma.

9           But just to clarify the situation, you understand,

10  Mr. Hinton, that Mr. Lipuma has been -- was originally --

11  became your attorney in this matter because he was appointed

12  by the Court?

13           DEFENDANT HINTON:  Yes, sir.  Yes, sir.

14           THE COURT:  Okay.  All right.  And you understand

15  that the way that he became Mr. Brannon's lawyer was

16  different.  Mr. Brannon reached out and hired Mr. Lipuma

17  without the involvement of the Court.  Do you understand that?

18           DEFENDANT HINTON:  Yes, sir.

19           THE COURT:  All right.  And you understand, again, as

20  I just asked you, that if you were to decide that you didn't

21  want Mr. Lipuma to continue because of these potential

22  conflicts of interest that the Court would appoint another

23  lawyer for you to come in and take Mr. Lipuma's place?  You

24  understand that?

25           DEFENDANT HINTON:  Yes, sir.

1      THE COURT:  All right.  And it's your decision and

2 your choice today that knowing all of this and the potential

3 conflict of interest that could affect Mr. Lipuma's

4 representation of you you still want Mr. Lipuma to continue as

5 your lawyer in this case?

6      DEFENDANT HINTON:  Yes, sir.

7      THE COURT:  Anything else from the government?

8      MS. WONG:  Nothing else from the government.

9      THE COURT:  Mr. Lipuma, anything else that you think

10 should be included in the colloquy?

11      MR. LIPUMA:  No, Your Honor.  I think it's been very

12 well covered.

13      THE COURT:  All right.

14      Based on our discussion here this afternoon, based on

15 my oral colloquy with Mr. Hinton, his responses which have

16 been made under oath, the filings the government and both

17 Mr. Lipuma made in the case in which Mr. Brannon is charged, I

18 do conclude that Mr. Hinton is knowingly and voluntarily

19 waiving any conflict of interest that may arise by virtue of

20 Mr. Lipuma's representation of Mr. Brannon and Mr. Hinton.  I

21 find that Mr. Hinton waives that conflict of interest or any

22 potential conflict of interest that might arise from that

23 representation and that Mr. Lipuma may continue to represent

24 Mr. Hinton going forward in this case.

25      All right.  Mr. Hinton, the last thing I want to make

1  sure you understand is if you change your mind and decide that

2  Mr. Lipuma -- that you don't want Mr. Lipuma to go forward

3  because of the conflict of interest, you need to notify him of

4  that ASAP, and Mr. Lipuma will advise the Court and we will

5  revisit this decision.  Do you understand that?

6          DEFENDANT HINTON:  Yes, sir.

7          THE COURT:  Okay.  All right.  I think that covers

8  what we need to cover with respect to the waiver of

9  Mr. Lipuma's representation of Mr. Brannon.

10         Anything else?

11         MS. WONG:  Nothing else from the government.

12         MR. LIPUMA:  Judge, if I just may ask because it's so

13 hard to maintain contact with people in custody.  Could I just

14 ask Mr. Hinton if he has received the letter I sent him with

15 the plea agreement?

16         THE COURT:  Sure.

17         DEFENDANT HINTON:  Yeah, I received it.

18         MR. LIPUMA:  Okay.  I'm going to set up a legal call,

19 okay, and we'll talk soon.

20         DEFENDANT HINTON:  All right.

21         MR. LIPUMA:  Thank you very much, Your Honor.

22         THE COURT:  Okay.  All right.  Thank you.

23         We'll reconvene on February 9th.  If there's a need

24 to do anything sooner, contact my courtroom deputy.

25         Thank you.  We're adjourned.

1           MR. LIPUMA:  Thank you, sir.

2           MS. WONG:  Thank you.

3       (Which were all of the proceedings heard.)

4

5                 C E R T I F I C A T E

6           I certify that the foregoing is a correct transcript,

7    to the extent possible, of the record of proceedings in the

8    above-entitled matter given the limitations of conducting

9    proceedings via telephone.

10

11    */s/ KELLY M. FITZGERALD*                      *May 7, 2022*
      KELLY M. FITZGERALD, CSR, RMR, CRR
12    Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25