UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 17 CR 40-3 |
| v. | |
| MARDI LANE | Judge John J. Tharp |

### GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully moves *in limine* with respect to the following evidentiary matters.[1]

### BACKGROUND

As alleged in the superseding indictment, the LAFA Street Gang is a criminal organization that operated in the Jeffrey Manor neighborhood on Chicago's south side. *See* Dkt. 89. Between approximately 2008 and 2018, its members engaged in a pattern of racketeering activity, including numerous acts of violence and narcotics trafficking.

On March 10, 2020, defendant and several LAFA members or associates were charged in a superseding indictment before this Court. *Id.* Overall, the superseding indictment alleged 18 counts against 13 defendants for criminal acts related to the LAFA Enterprise. *Id.* Defendant was charged in the lead count of the superseding

---

[1] For purposes of efficiency and ease of reference, the government has filed its motions *in limine* in a single document. No single motion herein exceeds the 15-page limit as imposed by the Local Rules.

indictment, which charged him and nine other co-defendants with conspiring to engage in a pattern of racketeering activity (collectively, the "RICO defendants") (Count One). *Id.* That count alleges that LAFA members committed multiple acts of murder, attempted murder, battery, robbery, witness tampering, and narcotics trafficking. Of those, defendant participated in at least one murder and six attempted murders. *Id.* To date, defendant's nine co-defendants have each pleaded guilty to racketeering conspiracy.

## TABLE OF CONTENTS

I.     MOTION TO ADMIT PORTIONS OF DEFENDANT'S GUILTY PLEA TRANSCRIPTS FROM STATE COURT ......................................................................5

II.    MOTION TO ADMIT CRIME SCENE PHOTOGRAPHS AND MEDICAL EXAMINER PHOTOGRAPHS AND DOCUMENTS DEPICTING VICTIMS.................7

III.   MOTION TO ADMIT CERTAIN 911 CALLS AS EXCITED UTTERANCES AND/OR PRESENT SENSE IMPRESSIONS ........................................................10

IV.    MOTION TO ADMIT STATEMENTS IN VICTIMS' MEDICAL RECORDS ............15

V.     MOTION TO ALLOW LIMITED EVIDENCE OF DEFENDANT'S INCARCERATION DURING THE CHARGED RACKETEERING CONSPIRACY.............................19

VI.    MOTION TO ADMIT EVIDENCE REGARDING THREATS, WITNESS TAMPERING, OR OTHER OBSTRUCTIVE ACTS.................................................................22

VII.   MOTION TO PERMIT QUESTIONING OF WITNESSES REGARDING FEAR OF RETALIATION ..................................................................................25

VIII.  MOTION TO ALLOW THE GOVERNMENT TO RECALL LAW ENFORCEMENT WITNESSES AND COOPERATING CO-DEFENDANTS DURING ITS CASE-IN-CHIEF....................................................................................26

IX.    MOTION TO EXCLUDE NON-IDENTIFICATION HEARSAY EVIDENCE ...........28

X.     MOTION TO PRECLUDE DEFENDANT FROM OFFERING HIS OWN PRIOR STATEMENTS ...................................................................................29

XI.    MOTION TO PRECLUDE IMPROPER IMPEACHMENT REGARDING ARRESTS AND OTHER NON-PROBATIVE "BAD ACTS" OF WITNESSES ....................31

XII.   MOTION TO PRECLUDE INQUIRY INTO LAW ENFORCEMENT OFFICERS AND AGENTS' NON-SUSTAINED DISCIPLINARY COMPLAINTS ..........................34

XIII.  MOTION TO BAR IMPROPER USE OF AGENTS AND OFFICERS' REPORTS ......37

XIV.   MOTION TO ADMIT DEFENDANT'S PRIOR FELONY CONVICTIONS SHOULD HE TESTIFY .....................................................................................40

XV.    MOTION TO PRECLUDE EVIDENCE AND ARGUMENT ABOUT INVESTIGATIVE STEPS NOT TAKEN.............................................................................43

**XVI.** MOTION TO PRECLUDE ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION ………………………..……………………….……………....…48

**XVII.** MOTION TO PRECLUDE ANY ARGUMENT OR EVIDENCE RELATING TO ALIBI OR UNAVAILABILITY, MENTAL DEFECT, OR PUBLIC AUTHORITY……………54

**XVIII.** MOTION TO PRECLUDE THE "MISSING WITNESS" ARGUMENT ……....54

**XIX.** MOTION TO PRECLUDE EXPLAINING OR DEFINING REASONABLE DOUBT ….56

**XX.** MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS ………………..………..56

I.   **MOTION TO ADMIT PORTIONS OF DEFENDANT'S GUILTY PLEA TRANSCRIPTS FROM STATE COURT**

The government respectfully moves this Court to admit select portions of a state court guilty plea transcript related to an act committed by defendant in furtherance of the LAFA Enterprise. Specifically, on or about December 8, 2016, defendant and co-defendant Quentin Lucious both pleaded guilty to aggravated discharge of a firearm in the Circuit Court of Cook County, Illinois, case number 15 CR 7629. That case stemmed from defendant and Lucious' participation in an April 2015 shooting involving Victim 9, Victim, 10, and Victim 11, which is also listed as a predicate act under Count One of the superseding indictment.[2] During the hearing, the following exchange occurred between defendant and the state court judge:

| | |
|---|---|
| The Court: | All right. In the case where you're charged together, 15 CR 7629, in Count No. 2, the charge reads that Quentin Lucious and Mardi Lane, on or about April 10th, 2015, offense of aggravated discharge of a firearm. Knowingly discharged a firearm in the direction of another person, that being [Victim 9]. Do you understand that charge Mr. Lane? |

* * * * *

| | |
|---|---|
| Defendant Lane: | Yes. |

* * * * *

| | |
|---|---|
| The Court: | Are you pleading guilty, therefore, freely and voluntary, Mr. Quentin Lucious? |
| Lucious: | Yes. |
| The Court: | Mr. Mardi Lane? |

---

[2] On the same day, defendant also pleaded guilty to aggravated fleeing and eluding in a separate, unrelated case. The government does not intend to offer portions of the guilty plea transcript regarding that case. The government will confer with defense counsel to appropriately redact the transcript (which also includes admissions by co-defendant Quentin Lucious).

Defendant Lane:    Yes.

These select statements "are clearly admissible under the Federal Rules of Evidence 801(d)(2) as relevant statements of the defendant." *United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993). In *Haddad*, the Seventh Circuit stated that a guilty plea "should be treated as any other admission or confession made by the defendant." *Id.* The Court reasoned:

> If the defendant stated to a person on the street that he was in fact guilty of possessing this gun, his statement would be admissible against him in his federal criminal trial. The fact that he made the admission in a separate state court criminal procedure does not change the evidentiary test.

*Id.* Accordingly, a defendant bears the burden to overcome the "strong presumption of regularity" that accompanies state court proceedings and to show "some defect that renders inadmissible such otherwise admissible evidence." *Id.* The Seventh Circuit is not alone in this view. *See United States v. Maestas*, 941 F.2d 273, 278 (5th Cir. 1991) ("It is well settled that a guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party-opponent."); *United States v. Holmes*, 794 F.2d 345, 349 (8th Cir. 1986) (providing that "[a] guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party opponent" under the Federal Rules of Evidence).

This Court also previously addressed this issue in *United States v. Chester, et al.*, 13 CR 00774 (N.D. Ill. 2016), where it ruled that:

> The statements [defendant] made in response to the judge's reading of the charges—effectively, 'I plead guilty to the charges you have just described'—are unquestionably non-hearsay statements under Fed. R.

6

Evid. 801(d)(2)(A) and constitute relevant evidence that [the defendant] is in fact guilty of the crime and the conduct set forth in those charges.

*Chester*, R. 529 at 4. The government therefore seeks a pretrial ruling allowing the admission of transcripts of defendant's adopted statements during his state court guilty plea.[3]

## II.    MOTION TO ADMIT CRIME SCENE AND MEDICAL EXAMINER PHOTOGRAPHS DEPICTING VICTIMS

The government respectfully moves this Court to admit crime scene and medical examiner photographs related to select murders and attempted murders, including but not limited to the March 2, 2015 murder of Deonte Hoard and attempted murder of Victim 6, and the June 1, 2014 murder of Denero Appleton. Crime scene and medical examiner photographs both "depict information valuable to the Government's case." *See United States v. Collins*, 368 F. App'x 517, 520 (5th Cir. 2010). Among other things, they "clarify oral testimony," help "illustrate the condition" of a victim's body, and, in the case of crime scene photographs, "the scene where [the victim's] body was left." *Id.* They establish "the *corpus delicti*" of the crime and "the approximate location of the [victim's] wounds." *United States v. Fleming*, 594 F.2d 598, 607-08 (7th Cir. 1979). They can also show "the identity of the victim, the manner of death, the murder weapon, or any other element of the crime." *United*

---

[3] Notably, the government is not seeking to admit the portion of defendant's guilty plea where the state prosecutor made a factual proffer. Although defendant's state defense attorney stipulated that the proffer accurately reflected how witnesses would testify at trial, the proffer was not formally adopted by defendant. As such, they are not admissible under Rule 801(d)(2).

*States v. Infelise*, No. 90 CR 98, 1992 WL 45023, at *1 (N.D. Ill. Feb. 5, 1992). Finally, they can "corroborate[ ] the testimony of a key government witness." *Id.*

Here, the government's planned crime scene and medical examiner photographs are highly relevant. They constitute direct evidence of the charged crime and corroborate anticipated testimony from government witnesses who will describe how the murders occurred. For example, as to the June 1, 2014 murder of Denero Appleton, the government expects that witnesses who were present on at the scene will testify that at one point, Appleton was lying face down on the ground as one or more individuals were shooting downward at his body. Crime scene and medical examiner photographs will show that Appleton died from multiple gunshot wounds, including gunshot wounds that entered from his backside, consistent with and corroborating the witnesses' testimonies about the shooters' positioning.

Similarly, as to the March 2, 2015 murder of Deonte Hoard, the government expects that cooperating co-defendant Reginald Jones will testify that defendant shot Hoard from the backseat of a car as Hoard was walking outside a particular part of the large Trumbull Park Homes complex. Residents from that specific area of the Trumbull Park Homes will testify to hearing gunshots and seeing a dark-colored SUV in the same area. Hoard's older brother may testify that after the shooting, he found Hoard lying on the ground, and that he unsuccessfully tried to carry Hoard inside before laying him down outside a particular residence. Crime scene photographs that depict Hoard's body will corroborate these witnesses' testimony. Additionally, Individual CP, who was with walking with Hoard at the time of the murder, will

describe the specific direction that Hoard turned in response to being struck. This testimony is corroborated by medical examiner photographs that depict Hoard with entry and exit gunshot wounds across his chest that are consistent with Individual CP's description.

Defendant may contend that crime scene or medical examiner photographs are not relevant and/or are unfairly prejudicial because the cause of death or fact of death is not in dispute. This common argument should be rejected. Evidence is relevant regardless of whether the issue to which it pertains is in dispute. Stated another way, the government is not limited to solely introducing evidence related to issues that defendant decides to dispute at trial. Indeed, such a rule would unfairly give defendant authority to determine what evidence the government may introduce and what evidence it may not. As *Old Chief v. United States* makes clear, however, defendants cannot stipulate away relevant yet prejudicial evidence. 519 U.S. 172, 189 (1997) (providing that "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense").

Finally, it is well-settled that "all probative evidence is prejudicial." *See, e.g., United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004). The operative question is whether evidence is *unfairly* prejudicial. *Id.* "Evidence is not to be excluded simply because it might be graphic or disturbing and if evidence is probative of an issue relevant to an element of the offense, it must be admitted in all but the most extreme cases." *United States v. Kapp*, 419 F.3d 666, 677 (7th Cir. 2005). As the Fifth Circuit

has stated, "admitting gruesome photographs of the victim's body in a murder case ordinarily does not rise to an abuse of discretion where those photographs have nontrivial probative value." *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007). The Seventh Circuit has noted that evidence is unduly prejudicial only "if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *United States v. Loughry*, 660 F.3d 965, 971 (7th Cir. 2011).

Here, crime scene and autopsy photographs of victims are inevitable where the charges specifically allege that defendant and his co-conspirators committed murders and attempted murders. They are not *unfairly* prejudicial—they are simply probative, and in fact direct evidence, of the murders for which defendant is charged. *See United States v. Sheffler*, No. 19-30067, 2021 WL 5085342, at *3 (C.D. Ill. Nov. 2, 2021) (citing *United States v. Soundingsides*, 820 F.2d 1232, 1242-43 (10th Cir. 1987) (upholding admission of "undeniably gruesome" autopsy photographs that painted a clearer picture of the victim's injuries, cause of death, and the defendant's malice aforethought)); *United States v. Briseno*, 88 F. Supp. 3d 849, 851 (N.D. Ind. 2015).

## III. MOTION TO ADMIT CERTAIN 911 CALLS AS EXCITED UTTERANCES AND/OR PRESENT SENSE IMPRESSIONS

At trial, the government intends to offer certain 911 calls made in response to violent racketeering acts committed by defendant and/or fellow LAFA members. The government respectfully moves this Court to admit these statements as both excited

utterances under Federal Rule of Evidence 803(2) and present sense impressions under Rule 803(1).

### A. Planned 911 Calls

The government currently intends on introducing the following 911 calls into evidence:

(1)   Murder of Denero Appleton

    a.    *Call #16580.* Individual KW called 911 and reported that there was a shooting at 9677 South Brennan, and that someone was laying in the grass.

    b.    *Call #16583.* An anonymous caller reported that they saw a maroon truck/SUV flee the scene.

    c.    *Call #16600.* A woman called 911 to report that someone was shot in front of her home at 9675 South Brennan.

    d.    *Call #16701.* An anonymous caller reported that after hearing six gunshots, they saw a new red/maroon SUV speed down the street with four people inside.

(2)   Murder of Deonte Hoard

    a.    *Call #13492(a) and (b).* Victim 6's fiancée called 911 and stated that she was at 10520 South Oglesby and needed the police because her boyfriend had just been shot on the top of his head.

    b.    *Call #13500.* Individual NT called 911 because someone shot into her front room window on South Yates Avenue with about three or four shots.

    c.    *Call #13417(a) and (b).* An individual called 911 from 10544 South Oglesby and stated that there was just a shooting and that someone was laying in the grass dead.

    d.    *Call #13518.* An individual called 911 and stated that they needed an ambulance at 10520 South Oglesby because someone who had just been shot in the head came through the door, awake and breathing. The caller mentioned

Apartment 64 [independent evidence will establish that Victim 6 resided in Apartment 64].

e. *Call #13699(a) and (b).* An individual called 911 stating that there were gunshots at 10544 South Oglesby, that someone was shot, and was laying in the snow.

(3) Attempted Murders of Victim 9, Victim 10, and Victim 11

a. *Call #6205.* Individual CF called 911 and asked them to send an officer to her home at 9629 South Merrion because someone had just shot her door.

b. *Call #6237.* Individual SR called 911 and reported a shooting at 96th and Merrion [near Victim 9's home] and stated that the perpetrators were riding in a 2012 grayish/light blue Volkswagen Beetle with tinted windows. Individual SR also identified defendant and Quentin Lucious as the shooters.

(4) Robbery of Victim 14

a. *Call #8087.* Victim 14 called 911 and stated he just got robbed at his house. He further stated there were two perpetrators, both of whom had guns, and that they took Victim 14's money and other items.

## B. The Planned 911 Calls Are Admissible as Excited Utterances

Under Rule 803(2), a hearsay exception applies to statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." The exception is premised upon the belief that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Fed. R. Evid. 803 Advisory Committee's Note. For a statement to qualify as an excited utterance: "(1) a startling event must have occurred; (2) the declarant must make the statement under the stress of the excitement caused by the startling event; and

(3) the declarant's statement [must] relate[ ] to the startling event." *United States v. Zuniga*, 767 F.3d 712, 716 (7th Cir. 2014).

As outlined below, the anticipated 911 calls relate to crimes of violence, namely, murder, attempted murder, and armed robbery, all of which constitute "startling events." *See, e.g.*, *United States v. Hayden*, 612 F. App'x 381, 385 (7th Cir. May 13, 2015) (noting that it is reasonable to assume that "[a] person" who was "robbed at gunpoint . . . will be in an excited state for at least some period of time"); *Imbert v. Kenneway*, 603 F. Supp. 3d 2, 7 (D. Mass. 2022) (noting that "a murder . . . is undoubtedly a startling event"); *United States v. Wilson*, No. 1:19-CR-00155 EAW, 2022 WL 17100308, at *7 (W.D.N.Y. Nov. 22, 2022) (same); *United States v. Delvi,* 275 F. Supp. 2d 412, 415 (S.D.N.Y. 2003) (holding that eyewitness who was injured during a shooting "experienced a startling event of the highest order.").

Moreover, the calls were made immediately after the startling events occurred. This is demonstrated by the callers' tones of voice and excited demeanors, as well as the substance of the calls themselves. In many cases, the caller indicated that the underlying event had "just" happened. Although excited utterances need only be contemporaneous with the excitement engendered by the startling event, not contemporaneous with the startling event itself, *see United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999), the timing of the statements to the startling event are nonetheless relevant. *United States v. Wesela*, 223 F.3d 656, 663 (7th Cir. 2000).

Finally, the calls provided the 911 dispatcher "basic information about the event so that the police could provide immediate assistance." *See Hayden*, 612 F. App'x at 385. They therefore qualify as excited utterances.[4]

### C. The Planned 911 Calls Are Admissible as Present Sense Impressions

Alternatively, Federal Rule of Evidence 803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," is not excludable as hearsay. "[T]o be admissible under this rule, '(1) the statement must describe an event or condition without calculated narration; (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter.'" *United States v. Boyce*, 742 F.3d 792, 797 (7th Cir. 2014) (quoting *United States v. Ruiz,* 249 F.3d 643, 646 (7th Cir. 2001)).

Here, each 911 caller was "personally present" during the acts they relayed to the dispatcher, *id.*, and made their statements only seconds or minutes later. *See United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002) ("[I]t is less likely for a declarant to 'deliberate or conscious[ly] misrepresent' the event if there is 'substantial contemporaneity' between the statement and the event." (quoting Fed. R. Evid. 803, Advisory Committee Notes (1972))). The contents of the calls show that the callers

---

[4] There is no Sixth Amendment confrontation issue because 911 calls are made for the purpose of reporting an ongoing emergency. *See Davis v. Washington*, 547 U.S. 813 (2006); *United States v. Graham*, 47 F.4th 561 (7th Cir. 2022).

personally perceived (whether visually or auditorily) the events described. The relevant statements constituted a "simple description[] of events," *id.*, and were "spontaneous," not the product of police questioning. *See Boyce*, 742 F.3d at 797-98 ("[A]nswering questions rather than giving a spontaneous narration could increase the chances that the statements were made with calculated narration."). Accordingly, they should be "generally regarded as trustworthy." *See Ruiz*, 249 F.3d at 646-47.

Furthermore, although the Seventh Circuit has made clear that Rule 803(1) "does not condition admissibility on the availability of corroboration," *id.* at 647, in this case, the planned 911 calls will be corroborated at trial. The calls should therefore be admitted. *See Boyce*, 742 F.3d at 797 (holding that 911 call made just after the suspect hit the victim was sufficiently close in time to the event to constitute present sense impression) (collecting cases).

## IV. MOTION TO ADMIT STATEMENTS IN VICTIMS' MEDICAL RECORDS

Pursuant to Federal Rule of Evidence 803(6), the government intends to offer pertinent medical records of multiple shooting victims regarding treatment they received after suffering gunshots wounds at the hands of LAFA members. Certain victim statements contained in these records constitute statements made for the purpose of medical diagnosis or treatment. Under Rule 803(4), they are therefore not excluded by the rule against hearsay and are admissible for their truth.

Rule 803(4) applies to a statement that "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." In general, Rule 803 exempts otherwise excludable hearsay statements "upon the theory

that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at trial even though he may be available." Fed. R. Evid. 803, Advisory Committee Notes. An individual seeking medical care is unlikely to lie because "a false statement may cause misdiagnosis or mistreatment." *White v. Illinois*, 502 U.S. 346, 356 (1992); *Hoglund v. Neal*, 959 F.3d 819, 834 (7th Cir. 2020) ("[A]n out-of-court declarant generally has a strong self-interest in making truthful statements to a medical provider when seeking diagnosis or treatment lest the medical provider misdiagnose and treat for allergies instead of the plague."). In other words, the declarant's self-interest in obtaining appropriate medical care renders statements made for purposes of diagnosis or treatment inherently trustworthy, such that "adversarial testing [through cross-examination] would add little to their reliability." *Idaho v. Wright*, 497 U.S. 805, 820-21 (1990).

"The test for determining whether statements relating to the cause of an injury are admissible under Rule 803(4) is 'whether such statements are of the type reasonably pertinent to a physician in providing treatment.'" *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990) (quoting *Cook v. Hoppin,* 783 F.2d 684, 690 (7th Cir. 1986)). The Seventh Circuit has noted that "the test for admissibility of statements under Rule 803(4) should be the same as under Rule 703—whether an expert in the field would be justified in relying upon this statement in rendering his opinion." *Id.* at 1273-74. This typically includes statements "describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the

16

cause or external source thereof . . . ." *Hoglund*, 959 F.3d at 834. "By contrast, statements regarding fault do not qualify under this exception." *United States v. Pollard*, 790 F.2d 1309, 1313 (7th Cir. 1986), *overruled on other grounds in United States v. Sblendorio*, 830 F.2d 1382, 1392 (7th Cir. 1987). "Of course, statements in medical records frequently relate both to the cause of a medical condition and fault." *Id.* "In such a situation a district court can redact the statement so as to render it admissible, rather than let an inadmissible portion of the statement taint the whole and refuse to admit the entire statement." *Id.*

Here, the government intends to offer the following recorded statements made for the purpose of medical diagnosis and treatment[5]:

> (1)    Victim 2 Medical Records

> [Page 23[6]] Patient found alert and oriented X3, states standing on corner talking to girlfriend when heard several shots then felt pain in R-arm.[7]

> (2)    Victim 3 Medical Records

> [Page 23 & 88] 17 yo reported single GSW to the right thigh, no other injuries.

> [Page 26] Pt aox3 sitting in lawn chair in yard. Pt states he was in driveway when he heard shots and was hit in the rt thigh. Pt hopped into yard and sat on lawn chair. Pt denies loc sob cp. Pt has feeling in all extremities good pedal pulse. Rt thigh significant swelling and pain.

---

[5] This motion *in limine* only outlines selected portions of medical records that contain recorded statements of victims admissible under Rule 803(4). In addition to offering these recorded statements, the government also intends to offer other, non-statement portions of the medical records as business records under Rule 803(6). Because the admissibility of those portions does not pertain to this motion, it is not further discussed here.

[6] Page numbers cited for the medical records in this motion *in limine* refer to the page for the entire medical record file, not the organic page number on the medical record itself.

[7] The government is in the process of obtaining medical records for Victim 1. To the extent such records reveal statements made by Victim 1 for the purpose of medical diagnosis and treatment, it intends to admit them under Rule 803(4).

(3)     Victim 5 Medical Records

[Page 35] Pt brought in by ems. He is crying and very upset ~~stating how much he hates Chicago.~~ He is saying ~~between his complaints about Chicago/wanting to leave because he's tired of it all and not disbelief~~ he has been shot that his right lef feels some numbness. He has no allergies and takes no meds. . . . Asked if the pain feels like a buring fire stated yes. He has slight decreased sensation over the dorsum of the foot pm the right vs left. He has full strength.

(4)     Victim 6 Medical Records

[Page 19, 74] Patient presents with C/O GSW/graze to top of head. Patient states he was walking down the street when he heard shots and felt pain in the top of his head. States he ran home and called the police.

[Page 32] The patient presents with 23-year-old male brought by ambulance for evaluation of gunshot wound to the head. Patient denies any other injury. Complains of mild headache. Patient states bullet grazed the top of his head. Denies any vision complaints, denies any other injury. The patient states he was playing basketball and he had a gunshot. Denies any other injury or pain. Police already notified. The onset was just prior to arrival. The course/duration of symptoms is constant. The character of symptoms is pain. The degree at onset was minimal. The degree at present is minimal. Risk factors consist of none.

(5)     Victim 7 Medical Records (Mercy Hospital)

[Page 13, 14] The patient is a 29 years old Male who presents with leg gunshot wound. The occurrence was 10 minutes prior to arrival.

Patient is a 29M with no sig pmhx who presents with single gsw to right thigh just pta. Denies f/c/n/v/d/cp/sob, denies numbness or weakness in right limb. No other injuries.

[Page 18] Pt with gunshot wound to right thigh entrance and exit pt AOx4, pt states he was driving and on 43rd and state he heard 4 gun shots.

(6)     Victim 7 Medical Records (Cook County Hospital)

[Page 21] Pt reports he was on the street, when he was shot by unknown assailant.

[Page 23] Pt reports pain worsened after returning from CT. Reports he feels like his thigh feels like a "water balloon."

Each of the statements outlined above were made to medical professionals for the purpose of medical diagnosis and treatment. *See, e.g., United States v. Cherry*, 937 F.2d 748, 756-57 (7th Cir. 1991). Moreover, where applicable, the government's proposed redactions will ensure that any portions of the planned statements that are not "reasonably pertinent" to a medical diagnosis or assign fault are omitted. As such, these statements are admissible under Rule 803(4).[8]

## V. MOTION TO ALLOW LIMITED EVIDENCE OF DEFENDANT'S INCARCERATION DURING THE CHARGED RACKETEERING CONSPIRACY

The Seventh Circuit has repeatedly indicated that evidence concerning the incarceration of a defendant is proper to provide the complete story of the case to the jury and to establish other relevant facts. For example, in *United States v. Lashmett*, 965 F.2d 179, 184-85 (7th Cir. 1992), the defendant contacted co-conspirators from prison in order to employ others to execute a fraudulent scheme on his behalf. The district court ruled that evidence of the defendant's incarceration was admissible because it demonstrated the defendant's motive for utilizing others to conduct his affairs and "filled a gap in the case by explaining his absence." *Id.* at 184. The Seventh Circuit agreed and held that this information "filled a 'chronological and conceptual void' in the government's case." *Id.* at 185 (quoting *United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir. 1984)). In reaching its conclusion, the Court cited with

---

[8] To the extent defendant seeks to impeach any victims' credibility at trial, the full contents of the victims' statements in medical records may also be admissible under Federal Rule of Evidence 801(d)(2)(B) as prior consistent statements.

approval the Eleventh Circuit's decision in *United States v. Champion*, 813 F.2d 1154

(11th Cir. 1987):

> In *United States v. Champion*, 813 F.2d 1154 (11th Cir. 1987), for
> example, one of the defendants was incarcerated during a portion of a
> drug conspiracy and allegedly administered the scheme by telephone
> from prison. The court admitted evidence of the defendant's
> incarceration under Rule 404(b) because it was linked together in time
> and circumstances with the conspiracy charged and was necessary to
> make the crime comprehensible to a jury. If the government had been
> prevented from presenting evidence as to [the defendant's]
> incarceration, the jury might have accorded undue weight to the fact
> that [the defendant] was not physically present [during much of the
> scheme].

*Lashmett*, 965 F.2d at 185. For these reasons, the Court found evidence of the

defendant's incarceration admissible. The Court also concluded that the introduction

of this evidence was not unfairly prejudicial, because the government did not call

attention to the fact the defendant was incarcerated; the jury was not given the

reason for the defendant's incarceration or the defendant's extensive criminal

background; and the district court provided a limiting instruction admonishing the

jury concerning the proper use of this evidence. *Id.*

The facts of this case squarely fit the circumstances described in *Lashmett* and

*Champion*. The government will introduce evidence of prior periods of incarceration

for two purposes: (1) to fill a conceptual gap in the evidence and provide the complete

story to the jury; and (2) to demonstrate the defendant's continued acts in aid of the

racketeering conspiracy after his incarceration. The charged racketeering conspiracy

involves conduct occurring over approximately 10 years, between 2008 and 2018.

Defendant was incarcerated at various times at either Cook County Jail or the Illinois

Department of Corrections during that period. For example, in approximately July 2007, defendant was convicted of armed robbery and sentenced to eight years' imprisonment; in approximately August 2013, he was convicted of resisting or obstructing a peace officer and sentenced to three years' imprisonment; and as outlined above, in approximately December 2016, he was convicted of aggravated discharge of a firearm and aggravated fleeing and sentenced to five years' imprisonment.

Defendant and his co-conspirators were not able to actively engage in illegal enterprise activity in and around Jeffrey Manor during his period of incarceration. Accordingly, the government should be entitled to explain why certain co-conspirators, including defendant, did not have a personal hand in particular racketeering acts. As in *Lashmett* and *Champion*, without this explanation, the jury will be misled concerning the role defendant and others played within the conspiracy, will be deprived of the "complete story," and may be drawn towards making improper inferences based upon a defendant's physical absence.

Additionally, and as detailed in the government's *Santiago* proffer, the government intends to introduce certain recorded conversations made by defendant and his co-conspirators while incarcerated in certain state criminal cases. *See* R. 512. The government should be able to introduce evidence of the declarant's incarceration to provide context for these jail calls, which include attempts to interfere and intimidate witnesses and find and destroy inculpatory evidence during the pendency of state cases.

The limited admission of this evidence is not unfairly prejudicial under Rule 403. The evidence is highly probative because it explains the nature of the defendant's involvement in the racketeering conspiracy (and why he was not present for certain undertakings in furtherance of the conspiracy), provides context for recorded jail calls, and also provides context for the shifting nature of criminal activity undertaken by the racketeering enterprise. Additionally, to eliminate the risk of unfair prejudice, the government would limit its evidence to the temporal period of incarceration, without introducing the specific nature of the underlying misconduct (unless it constitutes direct evidence of one of the alleged predicate offenses charged here). Finally, the government would also request a proper limiting instruction from the Court. *See United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011) ("[L]imiting instructions 'are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence.'" (quoting *United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006))). Accordingly, the government seeks a pretrial ruling allowing the admission of evidence relating to defendant's incarceration periods.

## VI. MOTION TO ADMIT EVIDENCE REGARDING THREATS, WITNESS TAMPERING, OR OTHER OBSTRUCTIVE ACTS

As alleged in the superseding indictment (R. 89 at 3) and detailed in the government's *Santiago* proffer (R. 512), defendant and his co-conspirators made threats and tampered with potential witnesses, as well as engaged in other obstructive acts, to prevent detection of the LAFA Enterprise and its members by law enforcement. Examples include the following:

(1) On or about April 14, 16, and 18, 2015, defendant and co-defendant Quentin Lucious were captured on recorded jail calls talking to their cohorts about victims and witnesses appearing in court and/or pointing them out as the offenders, as well as telling their cohorts about finding an inculpatory gun discarded during the police chase that led to their arrest;

(2) After the April 25, 2015 home invasion robbery committed by cooperating co-defendant Martez Easter and co-defendants Cottrell Mackey and Dijon Foston, LAFA member Demetrius Ivory contacted Victim 14 and discouraged Victim 14 from going to court, telling Victim 14 to "keep it in the streets";

(3) On or about June 4, 2016, during a recorded jail call between Easter and Foston, Foston told Easter that he had met with members of the Pocket Town Gangster Disciples gang the night before and told them to make Victim 14, a Pocket Town gang member, come to court and say that the police made Victim 14 give his earlier statement that implicated Easter in the robbery;

(4) On August 12, 2016, during a recorded jail call between Easter and Foston, Foston told Easter that he was trying to "guarantee" that Easter "came home" and that he had tried to pay Victim 14 two thousand dollars to drop the charges;

(5) Sometime between April 25, 2015 and May 11, 2015, LAFA member Demetrius Ivory told Victim 14 on Facebook that "Mfs [motherfuckers] got some bread [money] for you if you go to court and say you pick the wrong person." Ivory then asked, "How much yOu want[?]" Ivory also told Victim 14, "just go to court in

23

say you picked the wrong person," "Mfs [motherfuckers] a hit you with [give you] whatever you want";

(6) In approximately May 2015, Ivory and co-defendant Cottrell Mackey exchanged Facebook messages regarding Victim 14, during which Ivory told Mackey that Victim 14 had "pointed tez [Martez Easter] out in a lineup" and that Ivory was "on his ass on spike grave." Ivory further told Mackey, "when i get his [Victim 14's] whereabouts we on his ass'";

(7) Sometime after the April 25, 2015 robbery of Victim 14, Victim 15 was walking from her grandmother's house to a friend's house at East 101st Street and South Hoxie Avenue when Foston approached her and told her to stop "running [her] mouth." A few weeks later Foston again approached Victim 15 and told Victim 15 to stop talking about the robbery and said, "don't act like [Easter] has nothing to do with it," and that "tricking on me is tricking on him," meaning that telling on Foston meant telling on Easter.

The government seeks a pretrial ruling allowing the admission of evidence relating to these threats and unlawful attempts to influence, as probative of consciousness of guilt for defendant and his co-conspirators. *See, e.g., United States v. Mokol*, 646 F.3d 479, 483-84 (7th Cir. 2011) (finding that testimony that the defendant stated that anyone who informed on him would "end up on the ground" was admissible as probative of consciousness of guilt); *United States v. Johnson*, 624 F.3d 815, 820-21 (7th Cir. 2010); *United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009); *United States v. Miller*, 276 F.3d 370, 373 (7th Cir. 2002); *United States v.*

24

*Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990). Moreover, "as direct evidence of the crime charged, the evidence of threats is not even Rule 404(b) evidence." *United States v. DeAngelo*, 13 F.3d 1228, 1232 (8th Cir. 1994); *see also Miller*, 276 F.3d at 373-74. The strong link between efforts to interfere with a criminal investigation or prosecution and consciousness of guilt does not depend on any propensity inference.

For these reasons, the government respectfully requests that this Court admit evidence that defendant and his co-conspirators made threats and tampered with potential witnesses, as well as engaged in other obstructive acts.

## VII. MOTION TO PERMIT QUESTIONING OF WITNESSES REGARDING FEAR OF RETALIATION

The government respectfully moves this Court to allow certain questioning regarding witnesses' fear of retaliation, specifically, where witnesses have made inconsistent statements or denied knowledge of certain events, only to reverse course. The government anticipates certain witnesses will testify that, at various points, they altered their versions of events or denied knowing certain information out of fear of retribution. As the Seventh Circuit explained in *United States v. Thomas*, threat evidence is admissible when it "bears directly on a specific credibility issue regarding the threatened witness." 86 F.3d 647, 654 (7th Cir. 1996). According to the *Thomas* Court, "threat evidence can be relevant to explain a witness' inconsistent statements, delays in testifying, or even courtroom demeanor indicating intimidation." *Id.*; *see also Gomez v. Ahitlow*, 29 F.3d 1128, 1139 (7th Cir. 1994) (declining habeas relief after state trial court admitted evidence of threats to explain a witness' delay in coming forward with information); *United States v. Qamar*, 671 F.2d 732, 736 (2d Cir.

1982) (holding threat evidence admissible under Rule 403 to explain demeanor of witness who testified almost inaudibly and visibly wanted to get off witness stand). As explained in *Thomas*, "[i]n such situations, the evidence of threats is necessary to account for the specific behavior of a witness that, if unexplained, could damage a party's case." *Id.*

Applied here, witnesses who may testify at trial may have made inconsistent or delayed statements out of fear of possible retaliation from defendant or the LAFA Enterprise. Such evidence is probative to explain the witness' credibility and should be admitted. Of course, the defense will remain free to cross-examine such witnesses about other potential motives or explanations.

### VIII. MOTION TO ALLOW THE GOVERNMENT TO RECALL LAW ENFORCEMENT WITNESSES AND COOPERATING CO-DEFENDANTS DURING ITS CASE-IN-CHIEF

The government respectfully moves this Court under Federal Rule of Evidence 611(a) to permit the recall of certain law enforcement witnesses and cooperating co-defendants during trial. The government expects that it will need to call at least one law enforcement officer—FBI Special Agent Jonathan Williamson—and likely additional officers, as well as cooperating co-defendants, such as Martez Easter, who were involved in the commission or investigation of multiple predicate acts.

The mode and order of examining witnesses are within the discretion of the trial court. *United States v. Wheeler*, 745 F. App'x 643, 644 (7th Cir. 2018). Pursuant to Rule 611(a), the Court may exercise reasonable control over these procedures to "determin[e] the truth," "avoid wasting time," and "protect witnesses from harassment or undue embarrassment." Rule 611(a) entrusts the sequential

presentation of testimony to the district court. *See Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)

This case surrounds a decade-long racketeering conspiracy involving more than 15 murders and attempted murders, multiple acts of battery and robbery, witness tampering, and narcotics trafficking. The government generally intends to present its evidence in episodic order, one predicate act at a time. It therefore requests permission to recall certain witnesses to testify about separate events at different times throughout the trial. Permitting episodic or chronological testimony has been approved in complex conspiracy cases. *See, e.g., United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir. 1982) (recalling principal witness was proper since the witness was subject to cross-examination at each appearance as to the matters covered during that portion of direct examination); *United States v. Jackson*, 549 F.2d 517, 528 (8th Cir. 1977) (undercover agent recalled from time to time to testify about individual transactions in chronological order).

If certain law enforcement witnesses or cooperating co-defendants are required to testify only once, their testimony will necessarily encompass numerous predicate acts, as well as investigative milestones applicable to the entire case, at the same time. In contrast, recall will ensure a more orderly presentation of evidence and aid the jurors' comprehension of the overall narrative. *See United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011), *United States v. Puckett*, 147 F.3d 765, 770 (8th Cir. 1997) (upholding district court's decision to allow government to recall law enforcement witnesses so the evidence could be presented in chronological order).

The government therefore respectfully requests that this Court permit the recall of certain witnesses during trial. To ensure a full and fair cross-examination, the government proposes that defendant be permitted to cross-examine a witness fully after each instance of direct examination about any and all matters the witness testified about during that particular direct examination.

IX. **MOTION TO EXCLUDE NON-IDENTIFICATION HEARSAY EVIDENCE**

The government respectfully requests that this Court exclude any questioning of law enforcement officers related to non-identifications on photographic arrays or identifications of third parties where the person making the non-identification has not testified.

Under Federal Rule of Evidence 801(d)(1)(C), an out-of-court identification is not hearsay, and thus admissible, only where the declarant testifies and is subject to cross-examination about the prior statement, and the prior statement identifies a person as someone the declarant perceived earlier. If, however, the declarant who made the identification does not testify, the out-of-court identification is not admissible.

The Seventh Circuit addressed this area in *United States v. Harris*, 281 F.3d 667 (7th Cir. 2002). There, the defendant called as a witness a detective who was present at a line-up, and then tried to ask the detective about two witnesses who did not identify the defendant. The Seventh Circuit affirmed the preclusion of such testimony. The Court described the defendant's attempted line of as a "backdoor attempt to submit second-hand (and unchallengeable) evidence suggesting that [defendant] may not have been the person they saw who robbed the bank." *Id.* at 671-

28

72. The Court further noted that the defendant could have called the two witnesses to testify but declined to do so, which curtailed the government's ability to cross-examine them as to why they did not make an identification. *Id.* at 672.

The same holds true here. If defendant seeks to admit an out-of-court identification or non-identification pursuant to Rule 801(d)(1)(C), he must call the witness; he may not admit the identification through the law enforcement officer who administered the identification procedure.

## X. MOTION TO PRECLUDE DEFENDANT FROM OFFERING HIS OWN PRIOR STATEMENTS

As noted above and detailed in the government's *Santiago* proffer, (R. 512), the government intends to introduce certain inculpatory statements made by defendant as statements of a party opponent under Federal Rule of Evidence 801(d)(2). In response, defendant may seek admission of other, non-inculpatory statements. In doing so, however, he cannot likewise invoke Rule 801(d)(2). *See United States v. Sanjar*, 876 F.3d 725, 739 (5th Cir. 2017) ("When offered by the government, a defendant's out-of-court statements are those of a party opponent and thus not hearsay. When offered by the defense, however, such statements are hearsay . . . .") (citation omitted); *see also United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("[S]elf-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, but the non-self-inculpatory statements are inadmissible hearsay.") (citation omitted). A defendant "cannot admit [his] own out-of-court statements for their truth unless they qualify under an applicable exception to or exemption from the rule against hearsay." *United States v.*

*Schultz*, No. 14 CR 467-3, Dkt. # 109 at *1 (N.D. Ill. December 12, 2016). Any non-inculpatory portions of statements by defendant should therefore be excluded.

"A *narrow* exception to this general rule is the doctrine of completeness," *id.*, which provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part … that in fairness ought to be considered at the same time." Fed. R. Evid. 106. To admit evidence under Rule 106, a court must first find "that the evidence is relevant to the issues of the case." *United States v. Reese*, 666 F.3d 1007, 1019 (7th Cir. 2012). If the evidence is relevant, the court then considers whether: "(1) the proposed evidence explains the admitted evidence; (2) the proposed evidence places the admitted evidence in context; (3) admission of the proposed evidence will avoid misleading the trier of fact; and (4) admitting the proposed evidence will insure a fair and impartial understanding of all of the evidence." *Id.*

Importantly, however, the doctrine of completeness cannot be used "to circumvent Rule 803's exclusion of hearsay testimony," *United States v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012), and does not "require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)). Although the Court must be "'sensitive to the defendant's right to present evidence on [his] own behalf, as well as [his] right not to testify,'" Rule 106 "is not an open sesame to the admission of all of [a defendant's] hearsay statements just because the Government offers some of [the defendant's]

statements in its case-in-chief." *Schultz*, No. 14 CR 467-3, Dkt # 109 at *2 (quoting *United States v. Glover*, 101 F.3d 1183, 1192 (7th Cir. 1996)). "To be admitted under Rule 106, a specific inadmissible statement must be necessary to avoid misleading the jury," and the defendant "bears the burden of showing that any additional statement clarifies or explains a specific statement offered by the Government." *Id.* For example, "inadmissible evidence may be admitted to clarify a specific inference that the admitting party can draw where the inadmissible evidence directly qualifies or negates that inference." *Id.* Similarly, "hearsay statements that change the grammatical understanding or avoid substantial distortion in the meaning of a particular admitted statement may be admitted." *Id.* On the other hand, "hearsay statements that merely further [a defendant's] 'theory' of the case, disconnected from any other admitted statement, are not admissible under Rule 106." *Id.* at *3.

To that end, should defendant seek to admit his own non-inculpatory statements, the government requests that this Court require him to "identify the specific statements that [he] seeks to admit and explain specifically how—consistent with the principles set out above—the statement is admissible under the doctrine of completeness." *Id.* at *4.

## XI.   MOTION TO PRECLUDE IMPROPER IMPEACHMENT REGARDING ARRESTS AND OTHER NON-PROBATIVE "BAD ACTS" OF WITNESSES

The government respectfully moves this Court under Federal Rule of Evidence 608 to preclude any improper impeachment of government witnesses regarding prior

arrests that did not result in a criminal conviction or juvenile adjudication, or any other "bad act" unrelated to truthfulness.[9]

Under Federal Rule of Evidence 608(b), a witness' character for truthfulness may be impeached by specific instances of prior conduct only "if they are probative to the [witness'] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Generally, "a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations, or charges." *Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013) (collecting cases). "This rule is based upon a clear recognition of the fact that the probative value of such evidence is so overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury against the [witness] that total and complete exclusion is required in order that the right to trial by a fair and impartial jury may not be impaired." *Id.* (quoting *United States v. Dilts,* 501 F.2d 531, 535 n. 14 (7th Cir. 1974)) (quotation marks omitted).

The fact that a witness was charged with, but not convicted of, a crime has no bearing on that witness' credibility. "Unlike a criminal conviction, an *arrest* is not, in itself, probative of the arrested person's character for truthfulness." *Nelson v. City of Chicago*, 810 F.3d 1061, 1068 (7th Cir. 2016). "Simply put, evidence of a prior arrest does not support a conclusion that the arrested person has in fact broken the law." *Id.*; *see also Michelson v. United States,* 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the

---

[9] Because this motion *in limine* involves neither criminal convictions nor juvenile adjudications, Federal Rule of Evidence 609 does not apply.

credibility of a witness. It happens to the innocent as well as the guilty."); *United States v. Smith*, No. 06 CR 682, 2008 WL 11438034, at *3 (N.D. Ill. Jan. 23, 2008), *aff'd sub nom. United States v. Ajijola*, 584 F.3d 763 (7th Cir. 2009) (granting the government's motion to preclude defendants from impeaching witnesses based on prior arrests that did not lead to convictions and did not concern crimes involving dishonesty); *Fletcher v. Conway*, No. 89 C 5183, 1991 WL 24460, at *2 (N.D. Ill. Feb. 21, 1991) ("Prior arrests are unproven charges that are inadmissible, irrelevant and highly prejudicial.").

Moreover, in addition to the fact of an arrest *itself*, defendant may not inquire into the specific conduct *underlying* the arrest unless it is "probative of the witness's character for truthfulness" and satisfies the "Rule 403 balancing for undue prejudice or some other ground for excluding the evidence." *Nelson*, 810 F.3d at 1068 (emphasis added); *see also United States v. Van Dorn*, 925 F.2d 1331, 1336 (11th Cir. 1991) (precluding cross-examination about "threats to witnesses and court officers, including a prosecutor and a federal judge," because the conduct was not relevant to the witness's truthfulness); *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990); *United States v. Bentley*, 706 F.2d 1498, 1509-10 (8th Cir. 1983) ("We cannot say the activity in question here—a drug operation—is necessarily indicative of a lack of truthfulness under the standard imposed by Rule 608."); *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980); *United States v. Young*, 567 F.2d 799, 803 (8th Cir. 1977) (disallowing cross-examination of government witness concerning her alleged offer to pay $10,000 to have her husband killed, because "the proposed question was not

33

relevant to veracity and honesty and would have been highly prejudicial"). Therefore, to avoid the risk of unfair prejudice, defendant should be precluded from inquiring about underlying conduct on cross-examination unless he can make a preliminary demonstration that the conduct implicates a witness' character for truthfulness.

## XII.  MOTION TO PRECLUDE INQUIRY INTO LAW ENFORCEMENT OFFICERS AND AGENTS' NON-SUSTAINED DISCIPLINARY COMPLAINTS

The government anticipates calling current and former law enforcement officers as trial witnesses, including officers from the Chicago Police Department ("CPD"). In preparation for this testimony, and in accordance with the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), the government is in the process of requesting disciplinary records from law enforcement agencies related to its potential witnesses. These records may contain a list of administrative complaints filed against officers for alleged misconduct (often referred to, at least with respect to CPD, as a "complaint register" or "CR").

Evidence of any complaints resolved in a manner favorable to the involved officer (*i.e.*, any non-sustained findings) do not constitute admissible impeachment material within the meaning of *Giglio*, fall outside the scope of proper cross-examination under Federal Rule of Evidence 608, and should otherwise be excluded

under Rule 403. As such, the government respectfully requests that this Court preclude reference to such non-sustained complaints at trial.[10]

Under Federal Rule of Evidence 608(b), a witness' character for truthfulness may be impeached by specific instances of prior conduct only "if they are probative to the [witness'] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Moreover, it is within the Court's discretion to permit or exclude such cross-examination because "the possibilities of abuse are substantial," and conduct "must be sufficiently relevant to truthfulness before it can be the subject of cross-examination." *See United States v. Abair*, 746 F.3d 260, 263 (7th Cir. 2014); *United States v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006). These limitations are designed to "prohibit things from getting too far afield—to prevent the proverbial trial within a trial." *United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993).

Unproven allegations are not probative of anything, let alone untruthfulness. *United States v. Morrison*, 98 F.3d 619, 628 (7th Cir. 1996) (affirming district court ruling that the "mere filing of a complaint . . . regardless of whether the allegations

---

[10] This motion in *limine* only addresses non-sustained complaints or allegations against law enforcement witnesses, that is, complaints that resulted in administrative findings such as "not sustained," "unfounded," "exonerated," etc. This motion does not address sustained complaints. The government is not currently in a position to litigate sustained complaints against law enforcement officer witnesses, because it has not yet made final decisions as to which law enforcement officers it will call as witnesses at trial, and it has not yet received all documents related to such sustained complaints.

The government instead will disclose sustained complaints regarding truthfulness to defense counsel closer to trial and attempt to resolve the admissibility of each sustained complaint with defense counsel without Court involvement. In instances where the parties cannot resolve the admissibility of a sustained complaint, the government proposes addressing sustained complaints closer to trial, or during trial and immediately before the relevant witness testifies. If any sustained complaint calls for filing a separate motion *in limine*, the government will request leave of Court to do so.

in the complaint [were] true," does not meet the requirement that cross-examination be confined to conduct that is "probative of truthfulness or untruthfulness"). In a parallel context, it is well established that "a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations, or charges." *Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013) (collecting cases). This is because, "[u]nlike a criminal conviction, an *arrest* is not, in itself, probative of the arrested person's character for truthfulness." *Nelson v. City of Chicago*, 810 F.3d 1061, 1068 (7th Cir. 2016). "Simply put, evidence of a prior arrest does not support a conclusion that the arrested person has in fact broken the law." *Id.*; *Michelson v. United States,* 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty."). The same can be said for non-sustained officer complaints.

Non-sustained allegations are also inadmissible under Rule 403, because they would be unfairly prejudicial to an officer witness, confuse the issues, and needlessly delay the proceedings. If the Court allowed inquiry into non-sustained complaints, the government would be forced to provide the impacted officer with an opportunity to either contest or explain the underlying circumstances. This would exponentially extend the examination of each law enforcement witness, especially with respect to officers accused of misconduct on more than one occasion. Accordingly, non-sustained complaints against officer witnesses are not admissible.

## XIII. MOTION TO BAR IMPROPER USE OF AGENTS AND OFFICERS' REPORTS

The government respectfully requests a pretrial ruling that interview summaries prepared by the FBI, CPD reports describing witness interviews, and interview reports by other law enforcement agencies are not statements of the person being interviewed, and furthers asks this Court to preclude defense from introducing the contents of such reports to impeach such witnesses during cross examination, or otherwise suggesting to the jury that the reports are statements of the witnesses who did not write or adopt them.

The Jencks Act requires that, after a government witness testifies on direct examination, the government must provide the defense any statements made by the witness that relate to the subject of his or her testimony. *See* 18 U.S.C. § 3500. The government has turned over, and will continue to turn over, statements of potential witnesses. The Jencks Act defines a statement as "a written statement made by said witness and signed or otherwise adopted or approved by him," a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously," or a statement made by a witness to the grand jury. *See* 18 U.S.C. § 3500(e).

In *Palermo v. United States*, 360 U.S. 343 (1959), the Supreme Court held that, because the Jencks Act is meant to restrict the defendant's use of discoverable statements for impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense." *Id.* at 349, 352. The Court explained that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or

impressions" are "not to be produced." *Id.* at 352-53. Consistent with *Palermo*, the reports identified above are not witness statements of the *interviewees* discoverable under the Jencks Act.[11] *See United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."). Unless the witnesses have reviewed and adopted the reports—which was not the practice in this case—the reports cannot qualify as statements covered by § 3500(e)(1).[12] Moreover, in general, the reports were finished after interviews were completed and reflect the thought processes and interpretations of the agents and officers; they do not constitute a contemporaneous and substantially verbatim recital of the witness' statement under § 3500(e)(2).

Although production of such reports was not required, the government has produced such reports well in advance of trial and will continue to do so. In this circumstance, the defense should be limited to using the reports consistent with the law and rules of evidence. In particular, the defense should be precluded from introducing the contents of the reports to impeach witnesses on the basis of inconsistent statements, because the reports are not the statements of the witnesses being interviewed. Moreover, the defense should be precluded from publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the reports

---

[11] Such reports are discoverable under the Jencks Act as statements of the agent or officer, if the agent or officer who prepared the report was called as a witness to testify regarding the subject matter contained in the report.

[12] If such an unusual instance arises where the person being interviewed has adopted an agent's or officer's statement, the government will appropriately advise defense counsel.

are statements of the witness and contain inconsistencies. To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo*, which stated that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. at 350.

The government acknowledges that the defense may ask a witness whether he or she made a statement that is reflected in a report.[13] However, if the defense is not satisfied with the witness' answer, the defense may not publish or introduce the report's contents as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) ("such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"). Moreover, the defense may not use the reporting in a way that suggests to the jury that the reporting is a witness' statement. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from an FBI report during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the

---

[13] Additionally, if appropriate and with the proper foundation, the defense may attempt to refresh a witness' recollection by showing the witness the report, but only if the defense does so in a manner that does not imply that the report is the witness' own statement.

witness be shown the report and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the Federal Rules of Evidence).

## XIV. MOTION TO ADMIT DEFENDANT'S PRIOR FELONY CONVICTIONS SHOULD HE TESTIFY

The government respectfully moves, pursuant to Federal Rule of Evidence 609, to allow certain evidence of some of defendant's prior felony convictions if he testifies at trial. Defendant has at least three felony convictions for which he was released from confinement in the last 10 years. On August 28, 2013, he was convicted of resisting a peace officer and sentenced to three years' imprisonment. Additionally, on December 8, 2016, he was convicted in separate cases of aggravated fleeing and aggravated discharge of a firearm and sentenced to consecutive terms of two and five years' imprisonment, respectively.

Federal Rule of Evidence 609 permits the government, under certain circumstances, to attack a testifying defendant's character for truthfulness with evidence of prior convictions. As relevant here, evidence of felony convictions where a defendant's release from confinement occurred within the last 10 years "must be admitted" if its probative value outweighs its prejudicial effect.[14] Fed. R. Evid.

---

[14]     Additional admissibility requirements apply if "more than 10 years have passed since the witness's conviction or release from confinement" for the conviction at issue, "whichever is later." Fed. R. Evid. 609(b). Here, however, the government only seeks to admit evidence of defendant's prior convictions for which he was released from confinement within the last ten years.
        A defendant may also be impeached with evidence of a criminal conviction for any crime, regardless of the punishment, if the elements of the crime involved "a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Given the nature of defendant's criminal history, that provision does not apply here.

609(a)(1)(B); *see, e.g., United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004) (six prior felony convictions permitted to impeach defendant charged under 18 U.S.C. § 922(g)); *United States v. Hernandez*, 106 F.3d 737, 739-40 (7th Cir. 1997) (prior drug possession conviction permitted to impeach defendant charged with a drug-related kidnapping); *United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993) (four prior felony convictions permitted to impeach defendant charged under § 922(g)).

In evaluating whether a prior felony conviction satisfies Rule 609, a trial court considers: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's testimony; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Gant,* 396 F.3d 906, 909 (7th Cir. 2005).

These factors all weigh in favor of admitting certain evidence of some of defendant's prior felony convictions if he testifies at trial. As felony crimes punishable by more than one year of imprisonment, defendant's 2013 and 2016 convictions would offer impeachment value should he testify. *See Nururdin*, 8 F.3d at 1192 ("[A] prior felony need not have involved inherent dishonesty to be probative and admissible under Federal Rule of Evidence 609(a)(1)."); *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992) ("The idea underlying Rule 609 . . . is that criminals are more likely to testify untruthfully."); *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) ("[A]ll felonies have some probative value on the issue of credibility.").

41

Moreover, the relevant convictions all occurred within the last 10 years. Finally, if "conflicting accounts" are offered by defendant and the government's evidence, then defendant's credibility will become the central issue in the trial. *See Montgomery*, 390 F.3d at 1016 (recognizing that defendant's credibility was central and impeachment with prior drug conviction was proper); *United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997); *Smith*, 131 F.3d at 687 ("[S]ince [defendant's] testimony on this point directly contradicted that of the bank teller, his credibility was a central issue."). As with any other witness, the jury should be entitled to evaluate his trustworthiness in light of his criminal history.

In certain respects, some of defendant's convictions resemble the charged racketeering offense, or at least its underlying predicates. Nevertheless, "although the similarity of the two crimes" may increase "the risk of prejudice," the "importance of [defendant's] credibility" still "weigh[s] in favor of admissibility." *See United States v. Toliver*, 374 F. App'x 655, 658 (7th Cir. 2010). Moreover, to eliminate the risk of unfair prejudice, the government would limit its evidence to merely establishing the *existence* of defendant's prior felony convictions and the dates of disposition, without introducing the specific nature of the underlying misconduct. *See United States v. Lewis*, 641 F.3d 773, 783 (7th Cir. 2011) ("The law in this circuit is well settled that for purposes of impeachment by prior conviction, it is appropriate to reveal the title,

date, and disposition of the offense.").[15] The government would also request a proper limiting instruction from the Court. *See Toliver*, 374 F. App'x at 658 (noting that "the prejudicial effect [of prior convictions] was lessened because the government confined its inquiry to the type and time of conviction and the court gave the jury a limiting instruction"). Certain evidence of some of defendant's felony convictions should therefore be admitted.

## XV. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT ABOUT INVESTIGATIVE STEPS NOT TAKEN

The government anticipates that, during cross-examination of certain law enforcement witnesses, defendant may raise questions concerning investigative steps not taken, *e.g.*, the fact that certain witnesses were not interviewed, that interviews were not audio or video recorded, or that handwritten statements were not taken, to name a few.

As a general matter, "[t]he district court retains wide latitude in limiting the extent and scope of cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

---

[15] If the government elicits impeachment evidence and defendant minimizes, mischaracterizes, or tries to explain away his convictions, the government should be able to inquire further into the details of the prior conviction. *See United States v. Douglas*, 408 F.3d 922, 929 (7th Cir. 2005). The government recognizes that such an open door is not a "license to dwell on the details of the prior conviction and shift the focus of the current trial to the defendant's prior bad acts." *Id.* (quoting *United States v. Robinson*, 8 F.3d 398, 409 (7th Cir. 1993)). As such, the government would seek the Court's prior approval before eliciting facts beyond the offense's date and disposition.

It is well within a district court's discretion to preclude defendant's counsel from questioning witnesses about investigative steps not taken. *See United States v. Zaccaria*, 240 F.3d 75, 81 (1st Cir. 2001) ("In the absence of a particularized showing that the government was not turning square corners, the district court acted well within its discretion in refusing to let defense counsel embark on a fishing expedition."). A defendant may not put the government on trial by arguing that there was something more the government could have done to investigate the case when, as here, the defendant has not made any connection between an allegedly shoddy or slanted investigation and any evidence introduced at trial or a specific defense. *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998), *disapproved of on other grounds in Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999).

In *Robbins*, the defendant argued that the district court abused its discretion in limiting cross-examination of an agent "about the extent of the investigation," including whether the agent "investigated the length of time that [a co-defendant] and . . . Robbins had known each other." 197 F.3d at 845. In particular, the district court ruled:

> [I]t is not my intention to allow this trial to become a trial of the investigation. And it is my intention that the jury make its decision based on evidence actually presented rather than the—than speculation about the possible existence of other evidence that might have been developed if the investigation had been carried out in some other way.

*Id.* (citation omitted; alteration in original). On appeal, Robbins argued that the "quality and thoroughness of the investigation by law enforcement agents was an appropriate area of cross-examination," whereas the government contended that the

defendant simply intended to "impugn the thoroughness of that investigation in order to demonstrate that people other than the defendants were responsible for the crime and that law enforcement was either aware of, or ignored, evidence to that effect." *Id.* The Seventh Circuit found no abuse of discretion. The Court noted the "marginal relevance" of the contested information and agreed that the district court's concerns that the disputed line of questioning would lead to juror confusion or improper speculation were "valid." *Id.* Such evidence should be excluded here for the same reasons.

Similarly, in *McVeigh*, the district court precluded the defendant from introducing evidence related to members of the "Elohim City group." 153 F.3d at 1189-90. On appeal, the defendant claimed that such evidence showed "that there were other perpetrators" of the charged offenses, and that the government's investigation was "shoddy and slanted" by ignoring other potential suspects. *Id.* at 1190. The Tenth Circuit affirmed, rejecting the idea that the "quality of the government's investigation was material to his defense." *Id.* at 1192. It held that although the "quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial," this is only true where the defendant can establish the "requisite connection" between the omitted investigative steps and "any actual evidence introduced at trial," *Id.* Since there "was no trial evidence whose reliability would have been undercut" through the defendant's contested evidence, "[t]o have allowed [the defendant] to put the government on trial because there might have been something more the government perhaps could have done . . . would

inevitably divert the jury's attention from the issues of the trial." *Id.* As the court stated:

> Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation. The district court did not abuse its discretion, but rather is to be commended, in keeping the focus of the trial upon the issues properly before the jury.

*Id.*; *see also United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (finding no abuse of discretion where the district court precluded evidence offered to show that the government's investigation was "sloppy" and "noted that the jury would not be called upon to determine whether the government's investigation had been good or bad.").

Finally, in *Zaccaria,* the First Circuit upheld the district court's refusal to allow the defendant to question a Secret Service agent about the government's non-administration of a polygraph examination to certain witnesses. 240 F.3d at 80. The defendant argued that the proposed interrogation was "designed to show that the government was somehow playing fast and loose . . . by unfairly protecting its witnesses, currying favor with them, or tolerating their evasiveness." *Id.* at 81. The First Circuit, however, found "that surmise require[d] much too attenuated a chain of inference," and explained how the decision to not administer polygraphs had many possible explanations:

> For example, the fact that polygraph tests ultimately were not administered could be attributable to any number of reasons (e.g., administrative oversight, lack of time, lack of resources, the personal proclivities of a specific agent, knowledge that the test results would be inadmissible at trial, and so on and so forth). Many (perhaps most) of these possible reasons have no bearing either on the government's bona fides or on the issues in this case.

46

*Id.*

Applying the above judicial principles here, absent a sufficient connection between omitted investigative steps and actual evidence introduced at trial, general allegations that investigating agents could have done things differently are inadmissible and irrelevant. Moreover, even if such evidence has some modicum of probative value, it should nonetheless be barred under Rule 403 because of the danger of unfair prejudice and jury confusion. *See United States v. Patrick,* 248 F.3d 11, 23 (1st Cir. 2001) ("Such speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police, thus creating a real danger of unfair prejudice and jury confusion that 'substantially outweighed' the evidence's probative value."); *see also Zaccaria,* 240 F.3d at 81 (noting that the defendant's proposed line of questioning "would be apt to spark an unwarranted and profoundly prejudicial inference that the Secret Service agents believed the test results would be harmful to their case").

Here, the investigating agencies are not on trial, nor is the investigation into the LAFA Enterprise. Any attempt by the defendant to shift the spotlight to efforts the government could have taken inevitably wastes time and diverts the jury's attention from the issue of guilt. *See McVeigh*, 153 F.3d at 1192. Thus, unless defendant can connect the quality of the investigation to either other evidence introduced at trial or a specific defense, it carries limited probative value and the risk of substantial prejudice. Any such questioning should therefore be excluded.

47

### XVI. MOTION TO PRECLUDE ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION

The government respectfully moves this Court to preclude defendant from arguing or otherwise presenting evidence at trial designed to elicit jury nullification. It is improper for a defendant to suggest that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See*, *e.g.*, *United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *Smith v. Winters*, 337 F.3d 935, 938 (7th Cir. 2003) ("A defendant has of course no right to ask the jury to disregard the judge's instructions ('jury nullification')."); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.").

Although the government cannot anticipate every form of "jury nullification" defendant may seek to inject, it moves to exclude the potential areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983).

### A. Defendant's Age, Health, or Family Needs

While the government acknowledges that defendant is permitted to introduce limited testimony regarding his background, the government moves *in limine* to preclude evidence and argument regarding his age, health, and family so as to infer

either a motive for his criminal conduct or to invoke sympathy regarding the impact of a conviction upon either defendant or his family. Such evidence is irrelevant to the defendant's factual guilt and is designed for no other purpose than to invoke improper appeals for jury nullification. *See e.g. United States v. House,* 2015 WL 1058019, at *2 (N.D. Ill. Mar. 6, 2015) (excluding evidence of impact of defendant's conviction on his family members); *United States v. Shalash,* 2013 WL 4820927, at *5 (N.D. Ill. Sept. 10, 2013) (excluding testimony regarding defendant's family needs as motive or excuse for criminal conduct or to invoke sympathy); *United States v. Shields,* 1991 WL 236492, at *4 (N.D. Ill. Aug. 13, 1991) ("The defendants may present testimony establishing that they have families. However, the Court will not allow such testimony to be presented in detail, nor will the Court permit any testimony regarding the possible impact which a conviction might have upon any family member.")

## B. Government's Motivations for Investigating and Prosecuting the Case

Claims of selective or vindictive prosecution are irrelevant to the merits. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). Whether and why certain individuals were charged or not charged is equally immaterial. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (in a case involving a prohibited narcotics transaction, "[w]hether or not [a co-arrestee] was criminally charged [did] not make the facts relating to [the defendant's]

49

knowledge and participation in the attempted purchase more or less probable");
*United States v. Mosky*, No. 89 CR 669, 1990 WL 70832, at *1 (N.D. Ill. May 7, 1990)
("The government seeks to bar only any reference to its decisions regarding who to
indict and for what acts. The government is correct that those decisions are not
relevant to the charges faced by these defendants."). The subjective intentions or
motivations of a government agent are also extraneous. *See, e.g., United States v.
Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting that, even in the context of an
entrapment defense, it was proper for the trial court to prohibit the defense from
"mount[ing] an inquiry into the mental states of the investigating officers since such
an inquiry was irrelevant").

"In the ordinary case, 'so long as the prosecutor has probable cause to believe
that the accused committed an offense defined by statute, the decision whether or not
to prosecute, and what charge to file or bring before a grand jury, generally rests
entirely in his discretion.'" *Armstrong*, 517 U.S. at 465 (quoting *Bordenkircher v.
Hayes*, 434 U.S. 357, 364 (1978)). Accordingly, evidence bearing on the government's
decision to prosecute is "extraneous and collateral" and, thus, properly excluded from
trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the
exclusion of evidence offered to show that the "indictment was a political
instrument"). To the extent defendant wishes to raise these issues, he must raise
them with the Court, not the jury. *See United States v. Jarrett*, 705 F.2d 198, 204-05
(7th Cir. 1983) (finding claims of selective prosecution must be raised before trial);
*United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (finding that "the

issue of selective prosecution is one to be determined by the court"). Defendant has filed no such motion. Accordingly, evidence and argument related to these issues, in any form, should be barred by the Court.

## C.     Allegations or Claims of Outrageous Government Conduct

The Court should also preclude any evidence or argument related to so-called "outrageous government conduct." The Seventh Circuit has repeatedly held that "[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995) ("[t]he doctrine [of outrageous governmental misconduct] is moribund" (quoting *United States v. Santana,* 6 F.3d 1, 4 (1st Cir. 1993)) (second alteration in original)). Moreover, the issue of government misconduct is a matter of law for determination by the Court and must be raised in the form of a pretrial motion. *See United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) ("All of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.") (collecting cases).

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (quoting *Sears v. Romiti,* 50 Ill.2d 51, 277 N.E.2d 705 (1971)). In these types of cases, the "thrust of the defense is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts have granted motions *in limine* "to bar defendants from presenting

evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States Shields*, No. 90 CR 1044, 1991 WL 236492, *3 (N.D. Ill. 1991); *see also United States v. Boender*, No. 09 CR 186, 2010 WL 811296, at *3 (N.D. Ill. March 3, 2010) ("The Seventh Circuit does not recognize an outrageous government conduct defense: the doctrine is more than moribund—it is stillborn because it never had any life; and it certainly has no support in the decisions of this court, which go out of their way to criticize the doctrine."); *United States v. Katz*, No. 92 CR 94, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992); *United States v. Finley*, 708 F. Supp. 906, 913 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation"). Accordingly, the government moves to bar the defense from introducing evidence or argument of outrageous government conduct.

### D.    Penalties Faced by the Defendant if Convicted

The Seventh Circuit has held that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *overturned on other grounds*, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (footnote omitted) (quoting *Rogers v. United States,* 422 U.S. 35, 40 (1975))); *Aliwoli*

*v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000); 7th Cir. Pattern Crim. Jury Instr. 4.08 (2022 ed.) ("In deciding your verdict, you should not consider the possible punishment for the defendant[s] [who [is; are] on trial]."). Mention of the potential penalties faced by defendant—including possible imprisonment, restitution, or fines—would only invite the jury to consider the penal consequences of a conviction and, ultimately, nullification. They should accordingly be excluded.

## E. Defendant Being "Punished Twice for the Same Crime"

Similarly, the government has also alleged a predicate act committed in furtherance of the racketeering conspiracy for which defendant was previously convicted in a related state court criminal case. As outlined above, in approximately December 2016, defendant was convicted of aggravated discharge of a firearm in the Circuit Court of Cook County, and sentenced to five years' imprisonment. That case stemmed from defendant and co-defendant Quentin Lucious' attempted murders of Victim 9, Victim, 10, and Victim 11, which is alleged in the superseding indictment. Any argument that defendant has already "served his time" is improper and should be precluded.

## F. "Golden Rule" Argument

Finally, defendant should be precluded from making a so-called "Golden Rule" appeal, *i.e.*, that the jury should place itself in his shoes. The Seventh Circuit held such arguments to be improper in *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989). *Teslim* involved an improper "Golden Rule" argument by the government. More recently, however, the Seventh Circuit held in *United States v. Roman*, 492 F.3d 803 (7th Cir. 2007), that "Golden Rule" arguments by the defense are equally

objectionable. According to the Court, "a 'Golden Rule' appeal in which the jury is asked to put itself in the defendant's position 'is universally recognized as improper because it encourages the jury to depart from the [position of] neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Id.* (quoting *Teslim*, 869 F.2d at 328); *see also Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982). Defendant should therefore be precluded from making such an argument to the jury.

## XVII. MOTION TO PRECLUDE ANY ARGUMENT OR EVIDENCE RELATING TO ALIBI OR UNAVAILABILITY, MENTAL DEFECT, OR PUBLIC AUTHORITY

Under the Federal Rules of Criminal Procedure, a defendant is required to provide the government with notice of: (1) any alibi or similar defense, including any defense asserting the defendant's unavailability on or near the dates named in the indictment (Rule 12.1); (2) any defense of a mental defect inconsistent with the state of mind required for the offense charged (Rule 12.2); and (3) any defense of public authority (Rule 12.3). In correspondence on different dates, including March 30, 2020 and May 7, 2020, the government requested that defendant provide notice of the above-described defenses. Because defendant has not notified the government of his intent to raise any of these defenses, the government requests that he be prohibited from introducing evidence or argument of such defenses at trial.

## XVIII. MOTION TO PRECLUDE THE "MISSING WITNESS" ARGUMENT

It is within the Court's discretion to prohibit argument concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). "The reasons for not calling witnesses are so many and so

complex—from … concern about the witness's appearance and demeanor to concern about the content of the testimony to a belief that the witness would invoke the privilege against self-incrimination—that a full exploration could take the trial far afield." *Id.* Thus, "when [a] witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). "The traditional position, limiting comment by judge or counsel to a witness under the control of the adverse party … is sound." *Id.* Therefore, the government respectfully requests that the Court prohibit defendant from introducing evidence about, or arguing that any relevant inference can be drawn from, the fact that additional witnesses did not testify at trial.

Alternatively, if the Court allows defendant to introduce evidence or argument regarding missing witnesses, the government seeks permission to respond appropriately. Ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by highlighting that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392; *see also United States v. Aldaco*, 201 F.3d 979, 988 (7th Cir. 2000) ("[I]t was not improper for the prosecutor to make clear to the jury that the defendant, like the government, has the power to subpoena any witness or witnesses relevant to the case after [the defendant's] counsel had opened the door to this reply argument by the prosecution.")

## XIX. MOTION TO PRECLUDE EXPLAINING OR DEFINING REASONABLE DOUBT

The government respectfully moves this Court to preclude counsel from attempting to define reasonable doubt. The Seventh Circuit has consistently held that "reasonable doubt" is a term that should not be defined by the trial court or counsel. *See, e.g.*, *United States v. Hatfield*, 590 F.3d 945, 949 (7th Cir. 2010); *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1999) ("The law is clear in this circuit that it is improper for attorneys to attempt to define the term…."); *United States v. Alex Janows & Co.*, 2 F.3d 716, 722-23 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury."); 7th Cir. Pattern Crim. Jury Instr. 1.04 (2022 ed.). "[A]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). To the contrary, any proffered definition is likely to "confuse juries more than the simple words themselves." *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993). "Jurors know what is 'reasonable' and are quite familiar with the meaning of 'doubt.' Judges' and lawyers' attempts to inject other amorphous catch-phrases into the 'reasonable doubt' standard … only muddy the water." *Glass*, 846 F.2d at 386. Thus, it is "inappropriate for judges to give an instruction defining 'reasonable doubt,' and it is equally inappropriate for trial counsel to provide their own definition." *Id.*

## XX. MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

As the government continues to prepare for trial, it anticipates that additional evidentiary issues, specifically issues unique to particular witnesses that the

government may learn during trial preparation, will arise requiring additional motions and rulings by the Court. As such, the government respectfully seeks leave of Court to file additional motions *in limine*, if necessary.

## CONCLUSION

For the foregoing reasons, the government respectfully moves to admit and exclude evidence as set forth above.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:     */s/ Paul Mower*
Paul Mower
Sivashree Sundaram
Simar Khera
Assistants United States Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604

Dated: March 10, 2023